[No. S072212. Aug. 19, 1999.]

SIERRA CLUB et al., Plaintiffs and Appellants, v.
SAN JOAQUIN LOCAL AGENCY FORMATION COMMISSION,
Defendant and Respondent;
CALIFIA DEVELOPMENT GROUP et al., Real Parties in Interest and
Respondents.

**COUNSEL**

Brandt-Hawley & Zoia and Susan Brandt-Hawley for Plaintiffs and Appellants.

Nancy N. McDonough and David Guy for Plaintiff and Appellant San Joaquin Farm Bureau Federation.

Remy, Thomas and Moose, Michael H. Remy, James G. Moose, John H. Mattox and Lee Axelrad for the Planning and Conservation League as Amicus Curiae on behalf of Plaintiffs and Appellants.

Herum, Crabtree, Dyer, Zolezzi & Terpstra, Steven A. Herum and Thomas H. Terpstra for Defendant and Respondent and for Real Parties in Interest and Respondents Gold Rush City Holding Company, Inc., and Califia Development Group.

Susan Burns Cochran, City Attorney, for Real Party in Interest and Respondent City of Lathrop.

Van Bourg, Weinberg, Roger & Rosenfeld and Sandra Rae Benson for the Northern California District Council of Laborers as Amicus Curiae on behalf of Defendant and Respondent and Real Parties in Interest and Respondents.

Meyers, Nave, Riback, Silver & Wilson, Andrea J. Saltzman and Rick W. Jarvis for Seventy Four California Cities as Amicus Curiae on behalf of Real Parties in Interest and Respondents.

## OPINION

**WERDEGAR, J.**—In *Alexander* v. *State Personnel Bd.* (1943) 22 Cal.2d 198 [137 P.2d 433] (*Alexander*), we held that when the Legislature has provided that a petitioner before an administrative tribunal "may" seek reconsideration or rehearing[1] of an adverse decision of that tribunal, the petitioner always must seek reconsideration in order to exhaust his or her administrative remedies prior to seeking recourse in the courts. The *Alexander* rule has received little attention since its promulgation, and several legal scholars and at least one Court of Appeal have expressed the belief that the rule has been abandoned or legislatively abrogated. That conclusion was premature; the rule remains controlling law. However, as it serves little practical purpose and is inconsistent with procedure in parallel contexts, we hereby abandon it. This is not to say that reconsideration of agency actions need never be sought prior to judicial review. Such a request is necessary

---

[1]The terms "reconsideration" and "rehearing" are used interchangeably by the literature and case authority in this area, as well as by the parties to this appeal. Perceiving no fundamental difference between the two terms for purposes of this case, we will do the same.

where appropriate to raise matters not previously brought to the agency's attention. We simply see no necessity that parties file pro forma requests for reconsideration raising issues already fully argued before the agency, and finally decided in the administrative decision, solely to satisfy the procedural requirement imposed in *Alexander*.

## I. FACTUAL AND PROCEDURAL HISTORY

In early 1996, the City of Lathrop (City) approved a proposal for a large development project on several thousand acres of farmland outside of city limits. A plan was approved, an environmental impact report (EIR) was certified, and a development agreement was executed. A second plan was approved to double the capacity of the City's wastewater treatment facility, and a separate EIR was certified for that project.

Proceedings were commenced before the San Joaquin Local Agency Formation Commission (SJLAFCO) to obtain approval of the City's annexation of the territory. The Sierra Club, the San Joaquin Farm Bureau Federation, Eric Parfrey and Georgianna Reichelt (collectively petitioners) objected in that proceeding. SJLAFCO overruled their objections and approved the proposed annexation; it also adopted a finding of overriding considerations with regard to the environmental impacts identified in the EIR.

Parfrey sent a letter to SJLAFCO requesting reconsideration of the approval. In the letter he asserted the required $700 filing fee for the reconsideration would be forthcoming. The next day he withdrew his request and, together with the other petitioners, filed this mandamus petition in the superior court. The suit named SJLAFCO as respondent, and various developers including Califia Development Group (Califia), the City and others as real parties in interest. The petition alleged a lack of substantial evidence to support the finding of overriding considerations with respect to the environmental impacts identified in the EIR and, alternatively, that SJLAFCO failed to follow the applicable statutory provisions related to territory annexation.

Califia moved to dismiss the petition. Observing that Government Code section 56857, subdivision (a) provides that an aggrieved person may request reconsideration of an adverse local agency formation commission (LAFCO) resolution, Califia argued that under the authority of *Alexander, supra*, 22 Cal.2d at page 200, such a request is a mandatory prerequisite to filing in the courts. Petitioners responded that the *Alexander* rule is no longer good law, as reflected in *Benton* v. *Board of Supervisors* (1991) 226 Cal.App.3d 1467, 1475 [277 Cal.Rptr. 481]. The trial court granted the motion to dismiss.

The Court of Appeal affirmed. The majority concluded dismissal was compelled by *Alexander*, despite its view that the *Alexander* rule is "outmoded" and "presents a fitful trap for the unwary." We granted review.

## II. THE LAFCO STATUTORY SCHEME

LAFCO's are administrative bodies created pursuant to the Cortese-Knox Local Government Reorganization Act of 1985 (Gov. Code, § 56000 et seq.) to control the process of municipality expansion. The purposes of the act are to encourage "planned, well-ordered, efficient urban development patterns with appropriate consideration of preserving open-space lands within those patterns" (*id.*, § 56300), and to discourage urban sprawl and encourage "the orderly formation and development of local agencies based upon local conditions and circumstances" (*id.*, § 56301). ■ A LAFCO annexation determination is quasi-legislative; judicial review thus arises under the ordinary mandamus provisions of Code of Civil Procedure section 1085, rather than the administrative mandamus provisions of Code of Civil Procedure section 1094.5. (*City of Santa Cruz* v. *Local Agency Formation Com.* (1978) 76 Cal.App.3d 381, 387, 390 [142 Cal.Rptr. 873].)

Government Code section 56857, subdivision (a) provides: "Any person or affected agency *may* file a written request with the executive officer requesting amendments to or reconsideration of any resolution adopted by the commission making determinations. The request shall state the specific modification to the resolution being requested." (Italics added.) Such requests must be filed within 30 days of the adoption of the LAFCO resolution, and no further action may be taken on the annexation until the LAFCO has acted on the request. (*Id.*, subds. (b), (c).) Nothing in the statutory scheme explicitly states that an aggrieved party must seek rehearing prior to filing a court action.

## III. THE *ALEXANDER* RULE

■ That failure to exhaust administrative remedies is a bar to relief in a California court has long been the general rule. In *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715] (*Abelleira*), a referee issued a ruling awarding unemployment insurance benefits to striking employees. The affected employers filed a petition for a writ of mandate without first completing an appeal to the California Employment Commission, as required by the statutory scheme. The appellate court issued an alternative writ and a temporary restraining order blocking payment of the benefits. We, in turn, issued a peremptory writ of prohibition restraining the appellate court from enforcing its writ and order. In so doing, we stated

the general rule that exhaustion of administrative remedies "is not a matter of judicial discretion, but is a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of *stare decisis*, and binding upon all courts. . . . [E]xhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts." (*Id.* at p. 293, italics in original.)

The employers in *Abelleira* argued that completing the administrative process would have been futile because the commission had already ruled against their position in prior decisions based upon similar facts. We rejected this argument, noting that a civil litigant is not permitted to bypass the superior court and file an original suit in the Supreme Court merely because the local superior court judge might be hostile to the plaintiff's views. "The whole argument rests upon an illogical and impractical basis, since it permits the party applying to the court to assert without any conclusive proof, and without any possibility of successful challenge, the outcome of an appeal which the administrative body has not even been permitted to decide." (*Abelleira, supra*, 17 Cal.2d at p. 301.)

We then stated: "It should be observed also that this argument is completely answered by those cases which apply the rule of exhaustion of remedies to rehearings. Since the board has already made a decision, if the argument of futility of further application were sound, then surely this is the instance in which it would be accepted. But it has been held that where the administrative procedure prescribes a rehearing, the rule of exhaustion of remedies will apply in order that the board may be given an opportunity to correct any errors that it may have made. [Citations.]" (*Abelleira, supra*, 17 Cal.2d at pp. 301-302.)

Two years later we issued *Alexander, supra*, 22 Cal.2d 198. In that case two civil service employees sought a writ of mandate directing the State Land Commission to reinstate them after the State Personnel Board had upheld their dismissals in an administrative proceeding. The Civil Service Act at the time provided that employees "may apply" for a rehearing within 30 days of receiving an adverse decision of the State Personnel Board. The employees did not seek rehearing before filing the writ petition, and the deadline for doing so passed. The trial court sustained the defendants' demurrer. (*Id.* at p. 199.)

We affirmed. "The rule that administrative remedies must be exhausted before redress may be had in the courts is established in this state. (*Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715],

and cases cited at pages 292, 293, 302.) The provision for a rehearing is unquestionably such a remedy. . . . [¶] The petitioners ask this court to distinguish between a provision in a statute which requires the filing of a petition for rehearing before an administrative board as a condition precedent to commencing proceedings in the courts [citations], and a provision such as in the present act which it is claimed is permissive only. The distinction is of no assistance to the petitioners under the rule. If a rehearing is available it is an administrative remedy to which the petitioners must first resort in order to give the board an opportunity to correct any mistakes it may have made. As noted in the Abelleira case, *supra*, at page 293, the rule must be enforced uniformly by the courts. Its enforcement is not a matter of judicial discretion. It is true, the Civil Service Act does not expressly require that application for a rehearing be made as a condition precedent to redress in the courts. But neither does the act expressly designate a specific remedy in the courts. So that where, as here, the act provides for a rehearing, but makes no provision for specific redress in the courts and resort to rehearing as a condition precedent, the rule of exhaustion of administrative remedies supplies the omission." (*Alexander, supra*, 22 Cal.2d at pp. 199-200.)

Justices Carter and Traynor each dissented.[2] Both dissents noted that the Legislature has the ability to make an administrative rehearing a mandatory requirement if it chooses to do so, and that it had already done so explicitly in two statutory schemes enacted prior to *Alexander*. (22 Cal.2d at p. 201 (dis. opn. of Carter, J.); *id.* at pp. 204-205 (dis. opn. of Traynor, J.).) Justice Carter further emphasized that the majority's broad interpretation of the exhaustion requirement is contrary to the principles of procedure ordinarily applicable in judicial and quasi-judicial forums. (*Id.* at p. 201.) For example, a litigant need not make a motion for a new trial before pursuing an appeal after final judgment in the trial court, nor must that litigant petition the Court of Appeal for rehearing prior to seeking review (or, at that time, hearing) before the Supreme Court after the appellate court issues its decision. (*Ibid.*) Justice Traynor additionally noted that the majority's interpretation was neither compelled by *Abelleira* (22 Cal.2d at p. 205) nor in accordance with the federal rule (*id.* at p. 204).

In 1945, the Legislature passed the Administrative Procedure Act (APA) (then Gov. Code, § 11500 et seq., now Gov. Code, § 11340 et seq.), which governs a substantial portion of the administrative hearings held in this state. The APA and related legislative enactments were the final culmination of a detailed Judicial Council administrative law study ordered by the Legislature

[2]Chief Justice Gibson did not participate in the decision.

two years earlier.[3] The Judicial Council reported its conclusions and recommendations in its Tenth Biennial Report to the Governor and the Legislature. With regard to permissive rehearings, the report states: "The [draft] statute provides . . . that the right to judicial review is not lost by a failure to petition for reconsideration. The Council decided that the established policy requiring the exhaustion of administrative remedies is adequately safeguarded by the requirement that the administrative proceeding must be completed before the right to judicial review exists. . . . [¶] The proposals in the field of judicial review are in substantially the form in which they were submitted publicly in a tentative draft. They have received general approval from the agencies and from members of the bar and the Council believes that the enactment of these recommended statutes will produce a substantial improvement in our present procedure for the judicial review of administrative orders and decisions." (Judicial Council of Cal., 10th Biennial Rep. (1944) Rep. on Administrative Agencies Survey, p. 28.)

In enacting the APA, the Legislature concurred with this recommendation. Government Code section 11523 controls judicial review of agency rulings under the APA and provides that "[t]he right to petition shall not be affected by the failure to seek reconsideration before the agency." Of course, section 11523 applies only in proceedings arising under the APA.

Over the next half-century, the *Alexander* rule remained controlling authority but garnered little attention in either case law or legal scholarship. *Alexander* was expressly followed in two early decisions. (*Clark* v. *State Personnel Board* (1943) 61 Cal.App.2d 800 [144 P.2d 84]; *Child* v. *State Personnel Board* (1950) 97 Cal.App.2d 467 [218 P.2d 52].) While over the decades *Alexander* was cited in decisions several dozen other times, the citation was nearly always a reference to the *Abelleira* principle, i.e., the general proposition that one must exhaust administrative remedies before seeking recourse in the courts.

The specific effect of failing to seek a seemingly permissive rehearing was not at issue in another published case until *Benton* v. *Board of Supervisors*, *supra*, 226 Cal.App.3d 1467. In *Benton*, opponents of a California Environmental Quality Act (CEQA) decision by a county board of supervisors did not request reconsideration by the board before seeking a writ of mandate in the superior court. The Court of Appeal rejected the argument the petitioners

---

[3]The Judicial Council was entrusted to "make a thorough study of the subject . . . of review of decisions of administrative boards, commissions and officers . . . [and] formulate a comprehensive and detailed plan . . . [including] drafts of such legislative measures as may be calculated to carry out and effectuate the plan." (Stats. 1943, ch. 991, § 2, p. 2904.)

had failed to exhaust administrative remedies, concluding that because county ordinances and CEQA guidelines expressly denied the board any authority to reconsider its decision, there was no additional remedy to pursue. (*Id.* at pp. 1474-1475.)

The Court of Appeal went on to bolster its conclusion, stating: "Second, even if we assume arguendo that the board had the authority to reconsider its adoption of the mitigated negative declaration, we are satisfied that the Bentons exhausted their administrative remedies. At one time, the California Supreme Court required an aggrieved person to apply to the administrative body for a rehearing after a final decision had been issued in order to exhaust administrative remedies. (*Alexander* v. *State Personnel Bd.* (1943) 22 Cal.2d 198, 199-201 [137 P.2d 433]; see 3 Witkin, Cal. Procedure ([4th]ed. [1996]) Actions, § [309, p. 398].) This holding—criticized by at least one legal scholar as 'extreme'—has been repealed by statute. (Gov. Code, § 11523 [Administrative Procedure Act cases]; see 3 Witkin, Cal. Procedure, *supra*, § 309, p. 398].) Therefore, we are not bound by it. The Bentons complied with the exhaustion requirement when they filed a timely appeal of the commission's decision to the board and argued their position before that body. [Citations.]" (*Benton* v. *Board of Supervisors, supra*, 226 Cal.App.3d at p. 1475, fn. omitted.)

The Legislature, of course, did not directly overturn the *Alexander* rule by enacting the APA, because the procedural changes it created were limited to APA cases. To directly repudiate the *Alexander* rule, the Legislature would have had to enact a contrary statute of general application, providing that in all cases not otherwise provided for by statute or regulation, the failure to seek reconsideration before an administrative body does not affect the right to judicial review. The *Alexander* rule thus remains the controlling common law of this state, even though the only recent case specifically to discuss that rule opined it is no longer in force.

## IV. MERITS OF THE *ALEXANDER* RULE

We have reconsidered the *Alexander* rule and come to the conclusion that it suffers from several basic flaws. First, the *Alexander* rule might easily be overlooked, even by a reasonably alert litigant. At the most basic level, when a party has been given ostensibly permissive statutory authorization to seek reconsideration of a final decision, that he or she is affirmatively *required* to do so in order to obtain recourse to the courts is not intuitively obvious. Even to attorneys, the word "may" ordinarily means just that. It does not mean "must" or "shall."

Likewise, attorneys and litigants familiar with the rudiments of court procedure know that one need not make a request for a new trial prior to filing an appeal of an adverse judgment, nor seek reconsideration of an adverse appellate decision prior to seeking review in this court. Without receiving explicit notification from within the statutory scheme, they are unlikely to anticipate that a different rule will apply in administrative proceedings. This requirement, indeed, may not be apparent even to practitioners with experience in administrative law, since under the APA a rehearing opportunity styled as permissive is actually permissive, and not a mandatory prerequisite to court review. (Gov. Code, § 11523.)

Nor would an attorney familiar with federal law be placed on notice. The relevant section of the federal Administrative Procedure Act, 5 United States Code section 704, provides: "Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes [of judicial review] whether or not there has been presented or determined an application . . . for any form of reconsideration . . . ." In spite of the citations to federal case law in the *Alexander* majority opinion, this is the common law rule in federal courts and had been for decades before *Alexander* was decided. (See, e.g., *Prendergast* v. *N. Y. Tel. Co.* (1923) 262 U.S. 43, 48 [43 S.Ct. 466, 468, 67 L.Ed. 853]; *Levers* v. *Anderson* (1945) 326 U.S. 219, 222 [66 S.Ct. 72, 73-74, 90 L.Ed. 26].)[4]

In sum, even an alert legal practitioner could overlook the necessity of seeking rehearing, as a condition to judicial review, until after the deadline to act had passed, and many who petition before administrative bodies do so without the benefit of legal training. In recent years, moreover, even an awareness of the rehearing issue might not have avoided the potential pitfall, given that the only recent Court of Appeal decision (*Benton* v. *Board of Supervisors, supra*, 226 Cal.App.3d at p. 1475) declares the rule to have been legislatively repealed, and a leading treatise on California procedure, citing that decision, strongly implies the rule is no longer in force.[5]

---

[4]Neither federal case relied upon by the *Alexander* majority actually holds that a rehearing must be sought whenever available. In each case, the litigants attempted to raise issues before the courts that had never been raised in the proceeding before the administrative tribunal. (*Vandalia R. R.* v. *Public Service Comm.* (1916) 242 U.S. 255 [37 S.Ct. 93, 61 L.Ed. 276]; *Red River Broadcasting Co.* v. *Federal C. Commission* (D.C. Cir. 1938) 98 F.2d 282 [69 App.D.C. 1].) Neither case stands for anything more than a general exhaustion principle, à la *Abelleira*.

[5]Witkin states: "In [*Alexander*], a split court took the extreme position that the exhaustion doctrine included a requirement of application to the administrative body for a *rehearing* of its final determination. [Citation.] This view was later repudiated by statute, both for the Personnel Board (Govt.C. 19588) and for agencies under the Administrative Procedure Act (Govt.C. 11523)." (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 309, p. 398, italics in

Of course, circumstances can exist where enforcement of a judicially created procedural rule is justifiable even though the rule is neither intuitively expected nor consistent with other procedural schemes. If the *Alexander* rule were necessary to the purposes behind the doctrine of exhaustion of administrative remedies, or at least significantly advanced those purposes, then its usefulness might well outweigh its drawbacks. This does not appear to be the case.

■ "There are several reasons for the exhaustion of remedies doctrine. 'The basic purpose for the exhaustion doctrine is to lighten the burden of overworked courts in cases where administrative remedies are available and are as likely as the judicial remedy to provide the wanted relief.' (*Morton* v. *Superior Court* [(1970)] 9 Cal.App.3d 977, 982 [88 Cal.Rptr. 533].) Even where the administrative remedy may not resolve all issues or provide the precise relief requested by a plaintiff, the exhaustion doctrine is still viewed with favor 'because it facilitates the development of a complete record that draws on administrative expertise and promotes judicial efficiency.' (*Karlin* v. *Zalta* (1984) 154 Cal.App.3d 953, 980 [201 Cal.Rptr. 379].) It can serve as a preliminary administrative sifting process (*Bozaich* v. *State of California* (1973) 32 Cal.App.3d 688, 698 [108 Cal.Rptr. 392]), unearthing the relevant evidence and providing a record which the court may review. (*Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465, 476 [131 Cal.Rptr. 90, 551 P.2d 410].)" (*Yamaha Motor Corp.* v. *Superior Court* (1986) 185 Cal.App.3d 1232, 1240-1241 [230 Cal.Rptr. 382].)

■ In cases such as this, however, the administrative record has been created, the claims have been sifted, the evidence has been unearthed, and the agency has already applied its expertise and made its decision as to whether relief is appropriate. The likelihood that an administrative body will reverse itself when presented only with the same facts and repetitive legal arguments is small. Indeed, no court would do so if presented with such a motion for reconsideration, since such a filing is expressly barred by statute. (Code Civ. Proc., § 1008.)

We also think it unlikely the *Alexander* rule has any substantial effect in reducing the burden on the courts. When the parties are aware of the rule and

original.) Some specific practice guides are even more emphatic in their view the *Alexander* rule is no longer good law. (See, e.g., 1 Fellmeth & Folsom, Cal. Administrative and Antitrust Law (1992) § 8.04, p. 361 ["Although at one time a litigant was required to seek a rehearing or petition for reconsideration, that requirement is no longer commonly applied." (Fn. omitted.)]; 2 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 1997) § 23.100, pp. 1015-1016 ["The continuing vitality of the *Alexander* rule . . . is questionable."].)

comply with it, the administrative body presented with the same facts and arguments is unlikely to reverse its decision. The only likely consequence is delay and expense for both the parties and the administrative agency prior to the commencement of judicial proceedings. Of course, the courts' burden is marginally reduced by the occasional case when a party, unaware of the rule, fails to comply and thus is barred from seeking judicial review, but we believe the striking of potentially meritorious claims solely to clear them from a court's docket should not stand as a policy goal in and of itself.

The primary useful purpose the rule might serve was expressed in *Alexander* itself. Theoretically, the rule "give[s] the [administrative body] an opportunity to correct any mistakes it may have made." (*Alexander, supra,* 22 Cal.2d at p. 200.) We presume, however, that the decisions of the various agencies of this state are reached, in the overwhelming majority of the proceedings undertaken, only after due consideration of the issues raised and the evidence presented. While occasional mistakes are an unfortunate by-product of all tribunals, judicial or administrative, the fact remains that a petition for reconsideration, raising the same arguments and evidence for a second time, will not likely often sway an administrative body to abandon the conclusions it has reached after full prior consideration of those same points.

We are not alone in our reasoning. After a multiyear consideration and public review process, the California Law Revision Commission recently issued a report recommending a complete overhaul and consolidation of the myriad statutes for judicial review of California agency decisions under one uniform procedural scheme. (Judicial Review of Agency Action (Feb. 1997) 27 Cal. Law Revision Com. Rep. (1997) p. 13 (Revision Report).) The commission's proposed legislation provides in pertinent part: "all administrative remedies available within an agency are deemed exhausted . . . if no higher level of review is available within the agency, whether or not a rehearing or other lower level of review is available within the agency, unless a statute or regulation requires a petition for rehearing or other administrative review." (*Id.,* § 1123.320, p. 75.) The comment to this section is clear: "Section 1123.320 restates the existing California rule that a petition for a rehearing or other lower level administrative review is not a prerequisite to judicial review of a decision in an adjudicative proceeding. See former Gov't Code § 11523, Gov't Code § 19588 (State Personnel Board). This overrules any contrary case law implication. *Cf.* Alexander v. State Personnel Bd., 22 Cal.2d 198, 137 P.2d 433 (1943)." (*Id.* at pp. 75-76.)

The Revision Report also contains several background studies by Professor Michael Asimow, who was retained by the commission as a special

consultant for this project. In discussing this issue, Professor Asimow opines: "Both the existing California APA and other statutes provide that a litigant need not request reconsideration from the agency before pursuing judicial review. However, the common law rule in California may be otherwise [citing *Alexander*]. A request for reconsideration should never be required as a prerequisite to judicial review unless specifically provided by statute to the contrary." (Revision Rep., *supra*, at pp. 274-275, fns. omitted.) We recognize that, to date, the Legislature has not acted on the Law Revision Commission's recommendations; we do not suggest that the unenacted recommendation reflects the current state of California law. It does reflect, however, the opinion of a learned panel as to the wisdom of and necessity for the *Alexander* rule.

Over 50 years ago, the United States Supreme Court suggested that: "motions for rehearing before the same tribunal that enters an order are under normal circumstances mere formalities which waste the time of litigants and tribunals, tend unnecessarily to prolong the administrative process, and delay or embarrass enforcement of orders which have all the characteristics of finality essential to appealable orders." (*Levers* v. *Anderson, supra*, 326 U.S. at p. 222 [66 S.Ct. at pp. 73-74]; see also Rames, *Exhausting the Administrative Remedies: The Rehearing Bog* (1957) 11 Wyo. L.J. 143, 149-153.) We agree. There is little reason to maintain "an illogical extension of this general rule [of exhaustion of administrative remedies that] require[s] an idle act." (Cal. Administrative Mandamus (Cont.Ed.Bar. 1989) § 2.30, p. 52.) Were the issue before us in the first instance, we would have little difficulty concluding that the rule concerning administrative rehearings should be made consistent with judicial procedure, the federal rule, and California's own APA.[6]

## V. Stare Decisis and Legislative Intent

The issue of whether seemingly permissive reconsideration options in administrative proceedings need be exhausted is not before us for the first time, however, and we do not lightly set aside a 50-year-old precedent of this court. "It is, of course, a fundamental jurisprudential policy that prior

---

[6]An amicus curiae submission from 74 California cities suggests that reversing the *Alexander* rule would interfere with the uniformity of California exhaustion law and create confusion as to which administrative remedies need be followed and which could be bypassed. The concern is overstated. There is nothing uniform about the current state of exhaustion law with regard to permissive reconsideration. Reversal would merely make California common law consistent with the APA, federal law, and parallel judicial procedure. The effect of such a reversal is limited to reconsideration and has no effect on general principles requiring that each available stage of administrative appeal be exhausted.

applicable precedent usually must be followed even though the case, if considered anew, might be decided differently by the current justices. This policy, known as the doctrine of stare decisis, 'is based on the assumption that certainty, predictability and stability in the law are the major objectives of the legal system; i.e., that parties should be able to regulate their conduct and enter into relationships with reasonable assurance of the governing rules of law.' [Citation.] [¶] It is likewise well established, however, that the foregoing policy is a flexible one which permits this court to reconsider, and ultimately to depart from, our own prior precedent in an appropriate case. [Citation.] As we stated in *Cianci* v. *Superior Court* (1985) 40 Cal.3d 903, 924 [221 Cal.Rptr. 575, 710 P.2d 375], '[a]lthough the doctrine [of stare decisis] does indeed serve important values, it nevertheless should not shield court-created error from correction.' " (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 296 [250 Cal.Rptr. 116, 758 P.2d 58].)

■ The significance of stare decisis is highlighted when legislative reliance is potentially implicated. (See, e.g., *People* v. *Latimer* (1993) 5 Cal.4th 1203, 1213-1214 [23 Cal.Rptr.2d 144, 858 P.2d 611] (*Latimer*).) Certainly, "[s]*tare decisis* has added force when the legislature, in the public sphere, and citizens, in the private realm, have acted in reliance on a previous decision, for in this instance overruling the decision would dislodge settled rights and expectations or require an extensive legislative response." (*Hilton* v. *South Carolina Public Railways Comm'n* (1991) 502 U.S. 197, 202 [112 S.Ct. 560, 564, 116 L.Ed.2d 560].)

In *Latimer, supra,* 5 Cal.4th 1203, we considered the ongoing vitality of a 30-year-old precedent of this court interpreting Penal Code section 654 as prohibiting multiple punishments for multiple criminal acts when those acts had been committed with a single intent and objective. (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839] (*Neal*).) Although the *Neal* rule had been the subject of criticism, and we acknowledged we might now decide the matter differently had it been presented to us as a matter of first impression (*Latimer, supra,* 5 Cal.4th at pp. 1211-1212), we concluded we were not free to do so because of the collateral consequences such a reversal might have on the entire complicated determinate sentencing structure the Legislature had enacted in the intervening years. "At this time, it is impossible to determine whether, or how, statutory law might have developed differently had this court's interpretation of section 654 been different. For example, the limitations the *Neal* rule placed on consecutive sentencing may have affected legislative decisions regarding the length of sentences for individual crimes or the development of sentence enhancements. [¶] . . . [¶] . . . What would the Legislature have intended if it had

known of the new rule? On a more general front, what other statutes and legislative decisions may have been influenced by the *Neal* rule, and in what ways? These are questions the Legislature, not this court, is best equipped to answer." (*Id.* at pp. 1215-1216.)

Of course, principles of stare decisis do not preclude us from ever revisiting our older decisions. Indeed, in the same year we decided *Latimer* we overruled a different sentencing precedent in *People* v. *King* (1993) 5 Cal.4th 59 [19 Cal.Rptr.2d 233, 851 P.2d 27] (*King*). The primary difference between the cases was the extent to which a reversal of precedent would cast uncertainty on the appropriate interpretation of the other statutes and case law that make up California's criminal sentencing structure. As we explained in *Latimer*, the sentencing precedent at issue in *King* "was a specific, narrow ruling that could be overruled without affecting a complete sentencing scheme. The [rule at issue in *Latimer*], by contrast, is far more pervasive; it has influenced so much subsequent legislation that stare decisis mandates adherence to it. It can effectively be overruled only in a comprehensive fashion, which is beyond the ability of this court. The remedy for any inadequacies in the current law must be left to the Legislature." (*Latimer*, *supra*, 5 Cal.4th at p. 1216.)

■■■ We do not perceive legislative reliance to be a substantial obstacle in this case. Like the precedent· at issue in *King*, *Alexander* sets forth a narrow rule of limited applicability. Certainly, no reason appears to believe the rule is a vital underpinning of the entire administrative law structure of California. Unlike the precedent at issue in *Latimer*, little hard evidence suggests the Legislature has affirmatively taken the *Alexander* rule into account in enacting subsequent legislation.

Unlike the rules at issue in both *King* and *Latimer*, the *Alexander* rule is not a matter of statutory interpretation, as it does not hinge on the meaning of specific words as used in a particular statute. It is a rule of procedure that comes into play whenever the Legislature offers parties the option to seek reconsideration of a final administrative decision without specifying in the relevant statute the consequences, if any, of failing to do so. Thus, the Legislature has not had an opportunity affirmatively to acquiesce in the *Alexander* rule by reenacting or reaffirming exact statutory language. (See, e.g., *Fontana Unified School Dist.* v. *Burman* (1988) 45 Cal.3d 208, 219 [246 Cal.Rptr. 733, 753 P.2d 689]; *Marina Point., Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].)

Likewise, as noted previously, in order directly to repudiate the *Alexander* rule, the Legislature would have been required to enact a contrary statute of

general application, providing that in all cases not otherwise provided for by statute or regulation, the failure to seek reconsideration before an administrative body does not, standing alone, affect the right to judicial review. The Legislature has not enacted such a statute, but that it has not chosen to do so is not necessarily dispositive of its intentions. "The Legislature's failure to act may indicate many things other than approval of a judicial construction of a statute: the ' " 'sheer pressure of other and more important business,' " ' ' " 'political considerations,' " ' or a ' " 'tendency to trust to the courts to correct their own errors . . . .' " ' " (*County of Los Angeles* v. *Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 391, 404 [179 Cal.Rptr. 214, 637 P.2d 681]; see also *King, supra,* 5 Cal.4th at p. 77; *Latimer, supra,* 5 Cal.4th at p. 1213; *People* v. *Escobar* (1992) 3 Cal.4th 740, 750-751 [12 Cal.Rptr.2d 586, 837 P.2d 1100].)

No explicit evidence of legislative acquiescence in the *Alexander* rule appears. Neither are there any indications of a legislative view as to the application of the *Alexander* rule specifically to the LAFCO statutory scheme. Respondents argue the Legislature must have enacted Government Code section 56857, subdivision (a) with the implicit understanding the *Alexander* rule would apply and with the affirmative intention that it do so. As we have noted, nothing in the language of the statute compels this conclusion or provides affirmative evidence of legislative approval or disapproval, or even awareness, of the *Alexander* rule.

Respondents alternatively argue that the Legislature invested the LAFCO reconsideration remedy with special significance by providing that, if a request for amendment or reconsideration is filed, the annexation process is suspended until the LAFCO has acted upon the request. (Gov. Code, § 56857, subd. (c).) From this, they extrapolate that the Legislature must consider reconsideration to be especially meaningful in the LAFCO context and, thus, that the Legislature must affirmatively believe requests for reconsideration are a mandatory remedy that must always be exhausted prior to judicial review. We do not agree. These sections merely demonstrate the Legislature considers such requests to have significance when they are actually made. They cast no light on whether the Legislature wants parties to file pro forma requests for reconsideration.

We have not been provided with, nor has our research disclosed, any legislative history demonstrating that, in enacting Government Code section 56857, subdivision (a), the Legislature affirmatively considered the significance of providing a permissive reconsideration remedy to a party who has already obtained a final decision. In lieu of direct indications of legislative

intent, respondents argue the Legislature's awareness and approval of the general applicability of the *Alexander* rule may indirectly be demonstrated by the existence of other statutes containing reconsideration options. The Legislature has enacted several statutes that provide for reconsideration before the administrative body, but specify that the right to seek judicial review is *not* affected by the failure to seek reconsideration. Respondents have identified several statutes worded in this manner, in addition to the APA itself. (Wat. Code, § 1126, subd. (b); Health & Saf. Code, § 40864, subd. (a); Gov. Code, § 19588; Stats. 1989, ch. 1392, § 421, pp. 6023-6024, Deering's Wat.—Uncod. Acts (1999 Supp.) Act 2793, p. 162; Stats. 1989, ch. 844, § 504, p. 2777, Deering's Wat.—Uncod. Acts (1999 Supp.) Act 4833, p. 26.) Because these statutes postdate and thus supersede the *Alexander* rule where applicable, their enactment permits an inference of ongoing legislative awareness of the *Alexander* rule. Reversing course at this date, respondents maintain, would render the relevant language in these provisions surplusage.

As petitioners point out, however, at least one statute provides the opposite. Labor Code section 5901 was amended in 1951 to provide in pertinent part: "No cause of action arising out of any final order, decision or award made and filed by a [workers' compensation] commissioner or a referee shall accrue in any court to any person until and unless . . . such person files a petition for reconsideration, and such reconsideration is granted or denied." (Stats. 1951, ch. 778, § 14, pp. 2268-2269.) Among other things, the 1951 amendment replaced the word "rehearing" in the statute with the word "reconsideration." (See Historical Note, 45 West's Ann. Lab. Code (1989 ed.) foll. § 5901, p. 177.) Thus, the Legislature chose to fine-tune language in a statute providing that a workers' compensation claimant must request reconsideration of a final decision prior to recourse to the courts, even though the entire provision would be surplusage were we to assume the Legislature's awareness of the rule of general application provided by *Alexander*.

Further ambiguity may be found in other statutes. Health and Safety Code section 121270, the AIDS Vaccine Victims Compensation Fund statute, provides in pertinent part: "(h) . . . Upon the request by the applicant within 30 days of delivery or mailing [of the written decision], the board may reconsider its decision. [¶] (i) Judicial review of a decision shall be under Section 1094.5 of the Code of Civil Procedure, and the court shall exercise its independent judgment. A petition for review shall be filed as follows: [¶] (1) If no request for reconsideration is made, within 30 days of personal delivery or mailing of the board's decision on the application. [¶] (2) If a

timely request for reconsideration is filed and rejected by the board, within 30 days of . . . the notice of rejection. [¶] (3) If a timely request for reconsideration is filed and granted by the board, . . . [within 30 days of the final decision]." Although the statute does not expressly state that a party who fails to seek reconsideration may seek judicial review, by providing for different time limitations depending on whether reconsideration was sought, the statutory wording arguably implies that in enacting the statute the Legislature was operating under the assumption that failure to seek reconsideration of a final administrative decision is not ordinarily a bar to further judicial review. Any such inference, however, is weak.

In sum, all the inferences the parties would have us draw are insubstantial and do not provide us with a sufficient basis to extrapolate legislative approval of the *Alexander* rule. The most one can say is that at times the Legislature has had a specific intention regarding the significance of reconsideration in an administrative scheme and has chosen to craft a statute so as to accomplish its intentions.

We ultimately return to the sole reliable indication of the Legislature's view of the need for the *Alexander* rule. ■ In enacting the APA, the Legislature was aware it was creating a general statutory framework that would be applied by myriad agencies under varying circumstances, not a specific scheme applicable to only one type of administrative hearing. Despite this anticipation of broad applicability, the Legislature determined the right to judicial review under the APA shall not be affected by failure to seek reconsideration before the agency in question, because the "policy requiring the exhaustion of administrative remedies is adequately safeguarded by the requirement that the administrative proceeding must be completed before the right to judicial review exists." (Judicial Council of Cal., 10th Biennial Rep., *supra*, at p. 28.)

"[The Tenth Biennial Report] is a most valuable aid in ascertaining the meaning of the statute. While it is true that what we are interested in is the legislative intent as disclosed by the language of the section under consideration, the council drafted this language at the request of the Legislature, and in this respect was a special legislative committee. As part of its special report containing the proposed legislation it told the Legislature what it intended to provide by the language used. In the absence of compelling language in the statute to the contrary, it will be assumed that the Legislature adopted the proposed legislation with the intent and meaning expressed by the council in its report." (*Hohreiter* v. *Garrison* (1947) 81 Cal.App.2d 384, 397 [184 P.2d 323]; accord, *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 817 [140 Cal.Rptr. 442, 567 P.2d 1162].)

█ Neither the APA nor any other statute has any compelling language to the contrary. As best we can surmise, the considered public policy judgment of the Legislature is that the exhaustion of administrative remedies doctrine is adequately safeguarded by the requirement that the administrative proceeding must be completed before the right to judicial review arises. This judgment is consistent with our own conclusion the *Alexander* rule is neither necessary nor useful.

Respondents argue that if we determine to overrule the *Alexander* rule, the decision should have only prospective effect. We do not agree. █ A decision of this court overruling one of our prior decisions ordinarily applies retroactively. (*Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 978 [258 Cal.Rptr. 592, 772 P.2d 1059]; *Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 151 [181 Cal.Rptr. 784, 642 P.2d 1305].) Admittedly, "we have long recognized the potential for allowing narrow exceptions to the general rule of retroactivity when considerations of fairness and public policy are so compelling in a particular case that, on balance, they outweigh the considerations that underlie the basic rule. A court may decline to follow the standard rule when retroactive application of a decision would raise substantial concerns about the effects of the new rule on the general administration of justice, or would unfairly undermine the reasonable reliance of parties on the previously existing state of the law. In other words, courts have looked to the 'hardships' imposed on parties by full retroactivity, permitting an exception only when the circumstances of a case draw it apart from the usual run of cases." (*Newman, supra,* at p. 983.)

█ We do not perceive that retroactive application of our decision will create any unusual hardships. *Alexander* set forth a rule of very limited application. That the general administration of justice will be significantly affected by its abrogation or many pending actions will be affected is unlikely. No issue of substantial detrimental reliance is present here; no one has acquired a vested right or entered into a contract based on the existence of the *Alexander* rule. (E.g., *Peterson* v. *Superior Court, supra,* 31 Cal.3d at p. 152.) █ Finally, all things being equal, we deem it preferable to apply our decisions in such a manner as to preserve, rather than foreclose, a litigant's day in court on the merits of his or her action. (See, e.g., *Newman* v. *Emerson Radio Corp., supra,* 48 Cal.3d at p. 990; *Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d at pp. 304-305.)

█ Respondents argue that to permit petitioners to receive the benefit of our decision would be inequitable, since they were presumably aware of the *Alexander* rule and made a voluntary decision to ignore it. Respondents

infer this awareness solely from petitioner Parfrey's initial request for reconsideration of SJLAFCO's approval of the annexation of the development property, which he later withdrew. In reality, the filing and subsequent withdrawal of a reconsideration request are equally consistent with an understanding that reconsideration is merely permissive as with a belief it is mandatory. Indeed, to assume petitioners consciously chose to expose their action to dismissal on purely procedural grounds is difficult. Moreover, as we have discussed in detail above, although *Alexander* was decided over a half-century ago, the rule of the case has remained relatively obscure since that time, and that a litigant would be uncertain of its vitality today is not at all unlikely. The filing and withdrawal of a request for reconsideration appear to reflect only a judgment that perfecting the request would not be worthwhile.

We hereby overrule *Alexander, supra,* 22 Cal.2d 198, and hold that, subject to limitations imposed by statute, the right to petition for judicial review of a final decision of an administrative agency is not necessarily affected by the party's failure to file a request for reconsideration or rehearing before that agency.

We emphasize this conclusion does not mean the failure to request reconsideration or rehearing may never serve as a bar to judicial review. Such a petition remains necessary, for example, to introduce evidence or legal arguments before the administrative body that were not brought to its attention as part of the original decisionmaking process. (See, e.g., 2 Davis & Pierce, Administrative Law Treatise (3d ed. 1994) § 15.8, p. 341.) Our reasoning here is not addressed to new evidence, changed circumstances, fresh legal arguments, filings by newcomers to the proceedings and the like. Likewise, a rehearing petition is necessary to call to the agency's attention errors or omissions of fact or law in the administrative decision itself that were not previously addressed in the briefing, in order to give the agency the opportunity to correct its own mistakes before those errors or omissions are presented to a court. The general exhaustion rule remains valid: Administrative agencies must be given the opportunity to reach a reasoned and final conclusion on each and every issue upon which they have jurisdiction to act before those issues are raised in a judicial forum. Our decision is limited to the narrow situation where one would be required, after a final decision by an agency, to raise for a second time the same evidence and legal arguments one has previously raised solely to exhaust administrative remedies under *Alexander.*

The judgment of the Court of Appeal is reversed, and the cause is remanded for further proceedings in accordance with this decision.

George, C. J., Mosk, J., Kennard, J., Baxter, J., Chin, J., and Brown, J., concurred.