Filed 11/20/17

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| LOS GLOBOS CORPORATION, | B275224 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC526006) |
| v. | |
| CITY OF LOS ANGELES et al. | |
| Defendants and Respondents. | |


APPEAL from an order of the Superior Court of Los Angeles County, Frederick C. Shaller, Judge. Affirmed.

Smith Law Firm and Craig R. Smith for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Blithe S. Bock, Assistant City Attorney, and Matthew A. Scherb, Deputy City Attorney, for Defendants and Respondents.

The Los Globos nightclub claims that Los Angeles inspectors harmed its business by reducing the number of patrons allowed at the club and did so without first providing the club with a statutorily-required hearing.  Los Globos appeals from the trial court's order sustaining the defendants' demurrer without leave to amend.  Los Globos admittedly failed to exhaust its administrative remedies prior to filing suit in superior court.  This failure bars Los Globos from pursuing its claim here.  We affirm the trial courts order.

## BACKGROUND[1]

In 2011, the Los Globos Corporation (Los Globos) operated a nightclub out of a two-story building in Los Angeles (the City).  In September 2011, Los Angeles Fire Department Inspector Gerald Travens (Travens) examined the club and issued a warning regarding the building's " 'unimproved [*sic*] construction.' "  Travens also forwarded his concerns about the club to Frank Lara (Lara), the principal inspector for the Los Angeles Department of Building and Safety (the Department).  In turn, Lara dispatched a code enforcement inspector to the club.  On September 22, 2011, the officer issued an "order to comply" citing the club's change of use of its first floor and its unpermitted improvements.  On September 26, 2011, Los Globos says it was told it had the proper permits for the

---

[1] The following facts have been taken from the second amended complaint filed by Los Globos, which is the operative complaint in this case.

club's current use and needed no other permits from the Department. However, on September 28, 2011, the Department issued the club a formal violation notice based on its unpermitted improvements.

In October 2011, Los Globos met with the fire department to discuss the occupant load (the maximum number of people allowed at any one time) for the building.[2] The fire department would not approve any occupant loads until a sprinkler system was installed. At a subsequent meeting, a fire department captain (acting on behalf of the chief) approved a maximum occupant load of 408 people for

---

[2] An "assembly occupancy" refers to a building, or a portion thereof, which is used for gathering together "50 or more persons for amusement, entertainment . . . drinking or dining . . . or activities of a similar nature." (L.A. Mun. Code, § 57.202.) The fire department chief determines the maximum occupant load permitted for a assembly occupancy. (*Id.*§ 57.1004.2.1.1.) "The maximum occupant load shall not exceed the maximum occupant load designated in the Certificate of Occupancy issued by the Department of Building and Safety, or in the absence of such certificate, the maximum occupant load approved by the Chief." (*Ibid.*) An assembly occupancy will be approved only if it "will not create any undue hazard as a result of fire or panic." (*Id.* § 57.105.3.9.2.1, subd. (4); see *id.* § 57.105.3.9.2.1, subd. (5) [approval subject to terms and conditions necessary to safeguard life and property from fire, explosion or panic].) There is no set formula when it comes to occupancy approvals because "life safety consists of more than exit requirements alone." (*Id.* § 57.4701.1.)

the first floor of the building and 330 people for the second floor, once Los Globos added 24-hour monitoring to the alarm and other alarm enhancements. The captain put this conditional approval in writing and Los Globos completed the work. In January 2012, another fire department captain inspected the building, ratified the same occupant loads that were conditionally approved back in October 2011, and told Los Globos it was approved to operate under them.

In March 2012, a news article about Los Globos highlighted the club's all-night dancing. As a result, in May 2012, the Department representatives Lara and Andrew Longoria (Longoria) told Los Globos that the club lacked a permit to operate a dance hall and a proper certificate of occupancy for dancing on the first floor. According to Los Globos, however, the club showed Lara and Longoria permits demonstrating the property could be used as a dance hall and that the two knew a certificate of occupancy allowing a dance hall on the property had been issued over 30 years earlier.

On June 6, 2012, Longoria and another representative from the Department issued Los Globos a " 'Not Approved' " notice asserting allegedly "unintelligible" violations. A week later, with its desired occupancy amounts allegedly approved, Los Globos resumed talks with the fire department on the issue. Los Globos had not been issued occupancy load cards displaying the maximum occupancy for posting on the premises and learned that none would issue until the club provided a "Division Four" fire permit, any

4

applicable conditional use permits, and a certificate of occupancy for the uses shown on plans previously given to the fire department.

According to Los Globos, although the club complied immediately with all three conditions, the fire department did not issue occupancy load cards. Instead, it told Los Globos that the fire department first had to speak with Lara, the principal inspector of the Department. Later, Los Globos posted occupancy load cards on its own, which listed the occupancy limits it claims the fire department had approved—408 people on the first floor; 330 people on the second. The club operated with those occupancies until December 28, 2012, when Travens confiscated the occupancy load cards and replaced them with cards allowing the same 330 people on the second floor, but only 49 people on the first floor—one person less than an assembly occupancy.

In January 2013, Los Globos received a certificate of occupancy from the Department stating that the building was a two-story dance hall, restaurant, and office. According to Los Globos, this certificate of occupancy was subsequently revoked without justification. Los Globos also alleges that the Los Angeles Police Commission became involved at some point by claiming that the club lacked a valid permit to operate a dance hall business. The police commission later granted such a permit, but only after imposing numerous conditions and an unreasonable delay.

On March 21, 2013, Los Globos filed a claim for damages with the City. The claim sought damages solely for

the Department's determination that part of the club's first floor could not be used as a restaurant or for dancing.  The City denied the claim on April 29, 2013.

On October 9, 2015, Los Globos filed a second amended complaint (SAC).  The SAC alleges four causes of action against the City, the fire department, the Department, the police commission, Lara, Longoria, and Travens (collectively, the defendants).[3]  The first two causes of action allege that reducing the first floor occupancy intentionally and negligently interfered with the club's prospective economic advantage.  The third cause of action alleges ordinary negligence based on the same conduct.  The fourth cause of action seeks declaratory relief—specifically, a determination that Los Globos can have an occupancy load of 408 people on the first floor of the nightclub and holds proper permits for its use of the property.

The defendants demurred to the SAC based on Los Globos' failure to state sufficient facts to support any cause of action; the defendants' immunity from damages under Government Code sections 815.2, 818.4, 820.2, and 821.2; and Los Globos's failure to comply with the Government Claims Act.  The trial court sustained the defendants' demurrer without further leave to amend and dismissed the complaint on March 29, 2016.

---

[3] As noted above, Lara and Longoria worked for the Department while Travens worked for the fire department.

# DISCUSSION

## I. Standard of Review

"Where a trial court sustains a demurrer without leave to amend, we review such action under the abuse of discretion standard. [Citation.] If there is a reasonable possibility that the pleading can be cured by an amendment, the trial court's ruling will be reversed. [Citation.] [¶] On review, we examine the Complaint's factual allegations to determine whether they state a cause of action on any available legal theory. [Citation.] We treat the demurrer as admitting all material facts which were properly pleaded. [Citation.] However, we will not assume the truth of contentions, deductions, or conclusions of fact or law [citation] and we may disregard any allegations that are contrary to the law or to a fact of which judicial notice may be taken." (*Interinsurance Exchange v. Narula* (1995) 33 Cal.App.4th 1140, 1143.) " 'The burden of proving such reasonable possibility is squarely on the plaintiff.' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) "Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636.)

## II. Exhaustion of Administrative Remedies

### A. *Rule of Exhaustion*

"[T]he rule of exhaustion of administrative remedies is well established in California jurisprudence." (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311,

7

321 (*Campbell*).) "In brief, the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292.) The rule "is not a matter of judicial discretion, but is a fundamental rule of procedure . . . binding upon all courts." (*Id.* at p. 293.) "Exhaustion of administrative remedies is 'a jurisdictional prerequisite to resort to the courts.' " (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70, italics omitted; see *Lopez v. Civil Service Com.* (1991) 232 Cal.App.3d 307, 311.)

The rule serves several well-established functions. First, it allows the administrative agency an opportunity to redress the alleged wrong without resorting to costly litigation. (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 501 (*Sierra Club*).) Second, even where complete relief is not obtained, it can serve to reduce the scope of the litigation or possibly avoid litigation. (*Ibid.*; *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 476 (*Westlake*).) Third, an administrative remedy ordinarily provides a more economical and less formal forum to resolve disputes and provides an opportunity to mitigate damages. (*Westlake*, at p. 476; see *Rojo v. Kliger* (1990) 52 Cal.3d 65, 83.) Finally, the exhaustion requirement promotes the development of a more complete factual record and allows the administrative agency or entity implicated in the claim an opportunity to apply its expertise, both of which assist later judicial review

8

if necessary.  (*Sierra Club*, at p. 501; *Westlake*, p. 476.)
Indeed, "[t]he utility of the department's factfinding
expertise exists even when the plaintiff's requested relief is
unavailable through the administrative process."  (*Wright v.
State* (2004) 122 Cal.App.4th 659, 669; see *County of Contra
Costa v. State of California* (1986) 177 Cal.App.3d 62, 75–78
& fn. 8; *Westlake*, at p. 476.)

The administrative remedies exhaustion rule has
exceptions, including an exception where the administrative
agency does not provide an adequate remedy.  (*Campbell*,
*supra*, 35 Cal.4th at p. 322.)  The administrative remedy also
must comport with due process.  (*Bockover v. Perko* (1994) 28
Cal.App.4th 479, 486 (*Bockover*).)  In addition, there is an
exception to the exhaustion requirement where it is futile to
pursue the administrative remedy.  (*Automotive
Management Group, Inc. v. New Motor Vehicle Bd.* (1993) 20
Cal.App.4th 1002, 1015.)  In *Bockover*, one of the plaintiff's
arguments was that her employer's policy and procedure
manual was ambiguous concerning grievance procedures.
(*Bockover*, at pp. 489–490.)  Despite the possible ambiguity
concerning the procedures, the court held "[w]here there is
some 'question about the applicability of [a] grievance
procedure,' the employee must 'present the question to the
[agency] so that [it can] decide the issue in the first
instance.' "  (*Id.* at p. 490.)  Thus, a plaintiff's
" 'preconception of the futility of administrative action [does]
not permit [her] to bypass the administrative remedy.' "
(*Ibid.*)

9

The exhaustion doctrine operates as a defense to litigation commenced by persons who have been aggrieved by action but who have failed to exhaust the administrative remedy available to them.  (*Anthony v. Snyder* (2004) 116 Cal.App.4th 643, 657.)

### B.    *Administrative Remedies Available Here*

The Los Angeles Municipal Code in effect at the time of the trial court proceedings set forth the administrative remedies available when challenging determinations made by the fire department.[4]  According to this code, "[t]he revocation, suspension, or denial of any Permit, Special Permit, General Approval, or Certificate of Fitness may be appealed to the Board [of fire commissioners] within 15 days after such revocation, suspension or denial."  (Former L.A. Mun. Code, § 57.03.13, subd. (A).)  Upon receipt of an appeal, the board shall hold a hearing and render a decision in writing.  (Former L.A. Mun. Code, § 57.03.13, subd. (B).)  The current Los Angeles Municipal Code, which works alongside California Code of Regulations, title 24, section 108.1, also sets out an appeal process.  (L.A. Mun. Code, §§ 57.101, 57.101.1, 57.108.)  A board of appeals consisting of

---

[4] The City has attached to its brief the relevant Los Angeles Fire Code sections in effect at that time, as set out in former Los Angeles Municipal Code sections 57.03.11, 57.03.12, 57.03.13. 57.04.03, 57.04.06, 57.04.11, 57.110.01 and 57.110.02.  The current Los Angeles Fire Code took effect on October 1, 2014, and can be found at http://www.lafd.org/fire-prevention/fire-code.

fire safety experts hears and decides appeals of determinations made by the fire code official.  (Cal. Code Regs., tit. 24, §§ 108.1, 108.3.)

When challenging determinations made by the Department, the Los Angeles Municipal Code provides for a board of building and safety commissioners to hear and determine "appeals from orders, interpretations, requirements, determinations, or actions of the Department pertaining to enforcement of specific ordinances, regulations, or laws in site-specific cases."  (L.A. Mun. Code, § 98.0403.1, subd. (b)(2).)  If a decision by the board of building and safety commissioners involves the enforcement or administration of land use ordinances, the decision also must be appealed to the director of the department of city planning, followed by an appeal to the appropriate planning commission.  (L.A. Mun. Code, §§ 12.03, 12.26, subd. (K)(1), (6)-(8).)  Only then does the determination become final.  (L.A. Mun. Code, § 12.26, subd. (K)(10).)

### C.    *Failure to Exhaust Available Remedies*

Exhaustion of administrative remedies is jurisdictional and can be addressed "at any point in the proceedings."  (*Campbell*, *supra*, 35 Cal.4th at p. 322, fn. 2.)  Even if the issue is not raised before the trial court, a plaintiff's failure to exhaust can serve as a basis for affirming the sustaining of a demurrer without leave to amend.  (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324; *Bocanegra v. Jakubowski* (2015) 241 Cal.App.4th 848, 856–857.)

Los Globos does not allege it exhausted administrative remedies with respect to the determinations it challenges in its lawsuit. Rather, Los Globos contends it was denied due process when Travens improperly confiscated its occupant load cards and the Department improperly revoked its certificate of occupancy. Thus, Los Globos claims, it could not avail itself of any administrative remedies.

Former section 57.03.12 of the Los Angeles Municipal Code provided: "Generally no permit, Special Permit, General Approval, or Certificate of Fitness shall be suspended or revoked until a hearing is held by the [fire department] Chief." Los Globos argues that because the City failed to hold such a hearing, "there was no proper revocation and therefore nothing to appeal."[5] However, the doctrine of exhaustion of administrative remedies applies despite a plaintiff's asserted denial of procedural due process. (*Edgren v. Regents of University of California* (1984) 158 Cal.App.3d 515, 522.) Los Globos's argument also makes little sense. When its certificate of occupancy was revoked, Los Globos could have appealed the revocation itself as well as the City's alleged failure to comport with due process when revoking the certificate. Indeed, rather than having "nothing to appeal," Los Globos, according to its own

---

[5] Thus, Los Globos does not contend administrative remedies were unavailable or that it would have been futile to pursue such remedies. Nor does Los Globos contend it was exempt from exhausting available administrative remedies because it sought money damages.

version of events, actually had multiple issues to appeal.[6] Because Los Globos failed to comply with this jurisdictional requirement and thus there is no reasonable possibility the pleading can be cured by an amendment, the trial court did not abuse its discretion in sustaining the defendants' demurrer.[7]  (See *id.* at p. 523.)  Consequently, we need not reach the remaining arguments on appeal.

---

[6] Los Angeles Municipal Code section 57.105.5.2 further provides that "[a]ny permit, Special Permit, general approval, or Certificate of Fitness may be temporarily suspended by the Chief for violation of the terms thereof when immediate action is necessary to abate conditions dangerous to life or property without such notice and hearing."  Thus, it is unclear whether Los Globos was entitled to a hearing at all.  Los Globos argues there was no indication that the City was temporarily suspending rather than a revoking its certificate.  In the end, this is a distinction without a difference.  Whether considered a suspension or deemed a revocation, under former Los Angeles Municipal Code section 57.03.13, subdivision (A), Los Globos had 15 days in which to appeal the City's action.

[7] Los Globos also failed to exhaust its judicial remedies by failing to file a writ petition in superior court.  (*Mobley v. Los Angeles Unified School Dist.* (2001) 90 Cal.App.4th 1221, 1245.)  Thus, the City's decision "has achieved finality" (*Briggs v. City of Rolling Hills Estates* (1995) 40 Cal.App.4th 637, 645–646), and "has the effect of establishing the propriety" of the City's decision. (*Westlake, supra,* 17 Cal.3d at p. 484).

**DISPOSITION**

The order is affirmed.  The parties are to bear their own costs on appeal.

CERTIFIED FOR PUBLICATION.


JOHNSON, J.


We concur:



ROTHSCHILD, P. J.



LUI, J.