[No. D041676. Fourth Dist., Div. One. Mar. 4, 2004.]

GARNER ANTHONY, Petitioner and Respondent, v.
JOHN SNYDER et al., Respondents and Appellants;
BARRATT AMERICAN INCORPORATED, a Delaware corporation, Real
Party in Interest and Appellant.

COUNSEL

John J. Sansone, County Counsel, and C. Ellen Pilsecker, Deputy County Counsel, for Respondents and Appellants.

Luce, Forward, Hamilton & Scripps, Jeffrey A. Chine and Brian C. Fish for Real Party in Interest and Appellant.

Feldhake, August & Roquemore, Arthur M. Wilcox and Katherine A. Slayton for Petitioner and Respondent.

OPINION

**HUFFMAN, Acting P. J.**—In this action for a writ of mandate and injunctive relief, petitioner and respondent Garner Anthony (Anthony) sought an order requiring the respondents below, the Board of Supervisors of the County of San Diego (the County or the Board) and the County's Director of Public Works, John Snyder (the director of public works; collectively the County appellants) to require the real party in interest below, Barratt American Incorporated (Barratt), to make certain improvements to a street adjoining Anthony's property in connection with a development being created by Barratt. In 1996 and 2001, the County approved tentative and final subdivision maps and entered into a related subdivision improvement agreement with Barratt for the completion of certain infrastructure improvements. The trial court ruled in favor of Anthony on his petition, directing the County appellants and Barratt to require and accomplish the requested improvements to Via Maria Elena (VME), a private road serving as a primary access road to the 28-unit residential development being constructed by Barratt, to the minimum improvement level required by the County Standards for Private Streets (rev. Apr. 1982) (referred to here as County Standards). (Code Civ. Proc., § 1085.)

On appeal of the judgment granting the writ of mandate, the County appellants and Barratt each bring a number of challenges to the judgment. These arguments generally fall into the categories of (1) whether Anthony's petition was properly cognizable by the trial court, or whether it was barred by the statute of limitations, or the doctrines of exhaustion of remedies or standing to sue; (2) whether the subdivision improvement agreement entered into between the County and Barratt, as part of the final subdivision map (final map) approval process, created enforceable contract rights as to Anthony; and (3) whether the County appellants had any mandatory duty, within

the purview of the Subdivision Map Act (SMA; Gov. Code,[1] § 66410 et seq.), to require Barratt to construct the subject road improvements. The County appellants and Barratt contend no such duty exists, because the County's director of public works had exercised his discretion at the tentative map stage, under the County Standards, to decide that such improvements were not required as part of the tentative subdivision map (tentative map) conditions, nor were they required at the time the final map was approved.

As we will explain, the trial court's decision is flawed in several important respects. First, the trial court erred in disallowing both the procedural defenses argued by the County appellants and Barratt, that Anthony had failed to exhaust his administrative remedies before bringing this action, and that the action is barred by the applicable statute of limitations. (§ 66499.37.) Moreover, on the merits, the trial court erroneously accepted the argument by Anthony that this was not an action "concerning a subdivision," within the language of section 66499.37, such that he should retain the ability to enforce the subdivision improvement agreement on a contractual or statutory basis. Rather, the subdivision improvement agreement must be read within and consistent with the statutory context of the SMA procedures, and it does not create separately enforceable contractual covenants, even if they are framed as a duty to follow standards set by County ordinances. We reverse the judgment with directions to enter a new judgment in favor of the County appellants and Barratt.

## STATEMENT OF FACTS AND PROCEDURE

### A. The Development and Petition

In 1995, Barratt's predecessor in interest applied for the County's approval of a tentative map related to a proposed development of 28 homes on large lots in a 127-acre parcel in Bonsall, San Diego County (the project). Barratt is the current owner and developer of the project. Access to the project is provided from a public street, Camino Del Rey, over VME, a private street (approximately a 2,300-foot portion). Anthony, a neighboring land owner, believed that the developer should widen the VME road and improve a private bridge there, although that portion of the road is offsite of the project. As of October 1995, the department of public works was recommending as a tentative condition of approval of the tentative map that the VME offsite improvements should be completed. However, that recommendation was deleted in November 1995 by the director of public works, because the road condition was deemed satisfactory and improvements were thought to be prohibitively expensive.

---

[1] All further statutory references are to the Government Code unless noted.

On November 30, 1995, a public hearing was held before the County's Planning and Environmental Review Board (PERB), regarding the proposed tentative map for the project. The County Department of Public Works prepared a study directed to the County Department of Planning and Land Use, describing the plans and specifications and recommending standard and other conditions on the tentative map. In turn, the director of planning and land use submitted a planning report to PERB, recommending that the tentative map be approved, attaching the planning, environmental, and public documentation that had been prepared regarding the development. Anthony's attorney attended the PERB hearing and submitted opposition, as did another person also requesting that the County require the developer to widen VME to County Standards.

At the November 30, 1995 hearing, PERB staff recommended and PERB approved the tentative map for the project without requiring that the VME offsite road improvements be constructed by the developer. As reflected in the PERB staff report, the County's Director of Public Works had made a determination that the road need not be widened, under his discretionary authority to make exceptions to the enforcement of County Standards for private streets. (County Stds., § 1.2.) Specifically, the director of public works' determination included findings that under the County Standards there were sufficient grounds not to require VME to be improved to County Standards, because an excessive amount of cut-and-fill construction would be required in order to apply those standards to that portion of the road, such that it was within the spirit and intent of the applicable ordinances to permit this section of VME to remain in its present condition. Also, a negative declaration was approved that the project would not significantly affect the environment, including traffic conditions.[2]

In December 1995, Anthony filed an administrative appeal to the County Planning Commission of the PERB project approval. The appeal contended

[2] It is not clear from the administrative record whether the named respondent John Snyder, the current director of public works, was in office in 1995 and made the subject recommendations. Anthony's respondent's brief states that Robert Copper was the director at that time. However, the record shows that Robert Copper was the acting director of the department of planning and land use at that time. Both the directors of public works and planning and land use reported to the planning commission and PERB. (San Diego County Code, § 81.304 (SDCC).) In any case, it is not disputed that the director of public works made the subject determination under the County Standards that VME need not be improved as a condition on the tentative map. The February 2, 1996 planning report to the planning commission states that the director of public works has the authority to make exceptions to the private streets or road standards where the application of them would result in an unusual and unreasonable hardship, and the director had determined that it was appropriate to permit this section of VME to remain in its present condition.

that VME was substandard, narrow, and meandering, and pursuant to the SDCC, the subdivision ordinance, section 81.402, the planning commission should impose a requirement on the developer to construct the offsite road improvements.[3] SDCC section 81.402, subdivision (b)(1), provides that major subdivisions must provide access by private road easements that are improved in accordance with County Standards. The staff report referred to the previous determination by the director of public works that VME need not be widened, as an exception to these County Standards.

In February 1996, Anthony's appeal was rejected by the County Planning Commission, which then approved the tentative map for the project, subject to specified conditions. These included both numerous standard conditions and special tentative map conditions, regarding various onsite and offsite infrastructure improvements, but not including the subject VME offsite road improvements.[4]

Regarding VME specifically, the conditions on approval of the tentative map required that the developer improve an existing metal pipe running under the road, repair road pavement along the road at the location of several lots, grant an access restriction easement over a one-foot strip along certain lots, and dedicate the project half of VME to a width of 30 feet.[5] The conditions required the private streets within the boundaries of the project to be of specific widths, but the only offsite road condition stated in the tentative map is that the developer must improve an offsite deceleration lane along eastbound Camino Del Rey at VME. No action was taken by anyone to challenge the tentative map approval before the Board, even though SDCC, section 81.307, permits an interested person to appeal to the Board from such a decision of an advisory agency under the SMA. (SDCC, § 81.307; Gov. Code, § 66452.5, subd. (b).)

Thereafter, in the next few years, ownership of the project was transferred from the original developer to Barratt. A noticed public hearing was held and

---

[3] The SDCC, the subdivision ordinance section, was before the trial court and has been lodged with this court and judicial notice taken of it as an enactment of the County. (Evid. Code, § 452, subds. (b), (c) & (h).) The trial exhibits have also been lodged with this court. The record has been augmented to include the reporter's transcript of the oral argument before the trial court.

[4] The only three standard conditions for tentative maps that were expressly waived here were specified as dealing with condominium or planned unit developments (not applicable), lot grading (not applicable), and a requirement of unitary filing of the tentative map (permitted to be waived).

[5] Apparently, the Barratt offer of dedication of the project half of the road (the segment directly abutting the subdivision) has never been accepted by the County. The County's reply brief states that the subject portion of VME between the subdivision boundary and the public street Camino Del Rey has not been offered for dedication, as it is not owned by Barratt. Hence the term, offsite improvements for the subject portion of VME.

the County Board approved the project's final map on January 24, 2001. The Board's findings stated that the final map conformed to the SMA and to all applicable County ordinances and policies. There were no specific or other references to the offsite road improvements for VME that had been rejected or omitted at the 1996 tentative map stage. There is no record of Anthony's participation in the final map approval hearing, by submitting objections or otherwise.

Also at the January 24, 2001 Board hearing, the County approved as a companion matter the agreement it had entered into with Barratt, the joint agreement to improve major subdivisions (referred to as the subdivision improvement agreement). Anthony did not submit opposition or comments regarding the subdivision improvement agreement. Pursuant to section 66462, this subdivision improvement agreement contractually obligates Barratt to complete those improvements identified on the tentative map and listed in the agreement, in exchange for the recordation of the final map pending the completion of those improvements. There is no reference to the offsite road improvements for VME in the subdivision improvement agreement. However, Anthony is contending that they are impliedly incorporated as requirements into the subdivision improvement agreement through its FIRST ("first") section. That section deals with the completion of improvements, such as roads, and provides at its paragraph 1 that the owner of the project agrees to complete the street improvements within the subdivision as shown on the attached plans and specifications, which are incorporated into the agreement by reference, along with the improvement of any other streets or easements specifically designated by the plans and specifications.

Further, paragraph 5 of this "first" section of the improvement agreement states in relevant part: "5. Incomplete Offsite Street and Utility Improvements. [¶] (a) In the event this unit or subsequent units of this project require access across streets that have not been improved and accepted into the public maintained road system . . . the Owner agrees to complete said improvements to the satisfaction of the Director . . . prior to requesting acceptance of the improvements secured under this Agreement."

Approximately one year after the final map and subdivision improvement agreement were approved, Anthony filed his petition on February 21, 2002, seeking to compel the County and the current director of public works to require Barratt to construct the offsite road improvements for VME. Anthony alleged he was entitled to a writ of mandate directing the County appellants to enforce their mandatory duties under section 66462 and SDCC section 81.402, with respect to the subdivision improvement agreement for the

construction of public improvements, by requiring Barratt to perform under that agreement with respect to the offsite road improvements for VME.

Demurrers were filed by both the County and Barrett, asserting statute of limitations defenses, failure to exhaust administrative remedies, and a lack of standing to bring the petition. All demurrers were overruled and the County appellants and Barrett were ordered to answer the petition. The matter was then set for hearing on the merits.

## B. Ruling: Procedural Issues

The ruling issued by the trial court first addressed the numerous claims regarding the lack of cognizability of the petition, and resolved them in favor of Anthony. On these preliminary procedural issues, the trial court determined there was no bar of the SMA statute of limitations, section 66499.37, because a determination favorable to Anthony would not serve to invalidate either Barratt's tentative or final map, nor would it affect the legality of the subdivision improvement agreement or any decision which was made in connection with the approval of the maps. Hence, the trial court viewed this action as one seeking interpretation of the subdivision improvement agreement, and this 90-day SMA limitations period was held not to apply.

Next, the trial court ruled that the challenges to the petition on the grounds of lack of standing under the subdivision improvement agreement as a contractual document were without merit. The court found it was sufficient that Anthony asserted he was an interested citizen who was asking the court to compel the County to enforce the Board's own contract. There was no need to turn to contract law in terms of third party beneficiary cases. Rather, "Where the question is one of public right, and the writ would compel enforcement of a public duty, plaintiff need not show any special interest in the result. (*Green v. Obledo* (1981) 29 Cal.3d 126, 144 [172 Cal.Rptr. 206, 624 P.2d 256].) 'It is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced.' " (*Ibid.*)

Further, the trial court rejected the argument that the petition should be dismissed because Anthony had failed to exhaust his administrative remedies by appealing the 1996 tentative map determination to the Board. The ruling states: "The issue presented by the petition is the interpretation of the improvement agreement which did not [exist] until approximately five years after the tentative map was approved. Petitioner maintains that the contract at issue was lawfully and properly approved by the respondent board. Petitioner is requesting that the court determine the duties of the respondents under the contract. [¶] The record shows that there was no reason for petitioner to pursue an administrative remedy at the time of final map approval where the

improvement agreement upon which the approval was based included a provision which required the construction of road improvements. [Citation.] The petition seeks to compel the respondent board to enforce the terms of the improvement agreement in a manner which was consistent with the requirements of county ordinances, as alleged in the petition."[6]

### C. Ruling: Substantive Issues

The trial court next turned to the substantive issues of whether the subdivision improvement agreement, when read in conjunction with the SMA statutory scheme under which it was executed, as well as the subdivision ordinance (SDCC), required Barratt to improve VME to the minimum level required by County Standards. The court stated this was a legal interpretation of the subdivision improvement agreement, presenting questions of law. Based on its review of the entire record in this case, the court concluded that the County had a mandatory duty to require Barratt to improve VME as requested. The court set forth its reasoning as follows. First, it relied upon the duty of the Board under section 66458 to approve a final map "if it conforms to all the requirements of this chapter and any local subdivision ordinance applicable at the time of approval or conditional approval of the tentative map . . . ." In addition, the trial court noted that section 66473 requires the Board to disapprove a final map for failure to perform any of the requirements or conditions imposed by local ordinance. In effect, the trial court ruled that the subdivision improvement agreement entered into under section 66462 did not affect the Board's duty to disapprove the final map if Barratt did not satisfy the conditions imposed by section 81.402. Critically, the trial court ruled, "There is no evidence in the administrative record which indicates that respondent board waived the conditions imposed by section 81.402 when it approved the final map." (SDCC, § 81.402, subd. (b)(1) [providing major subdivisions must provide access by private road easements that are improved in accordance with County Standards].)[7]

Consequently, the trial court ruled that the County was charged with enforcement of the subdivision ordinance, and it could not now excuse

---

[6] The challenges to the petition on the grounds Anthony's claims should be barred by the doctrine of laches were found to be without merit. Laches is not further argued on this appeal.

[7] The County Standards for private streets, issued by the County Department of Public Works, provide in relevant part in section 1.2: "The requirements set forth in these standards are considered minimum and may be exceeded at the option of the developer . . . . [¶] It is recognized that these standards will not be applicable to every situation that may a rise on a particular project. . . . The Director of Public Works may make exceptions to these standards where the application of the standards to a specific situation will result in an unusual and unreasonable hardship; provided, however, that the Director of Public Works determines that such modification is in conformity with the spirit and intent of applicable ordinances and the approving authority."

Barratt from its mandatory obligation under SDCC section 81.402 of the subdivision ordinance to improve VME to applicable County Standards. It also ruled that under the subdivision improvement agreement, Barratt had the same obligation to improve VME, an access road, to minimum County Standards.

Moreover, the trial court interpreted paragraph 5 of the subdivision improvement agreement, referring to completion of offsite street improvements " 'to the satisfaction of the director . . . prior to requesting acceptance of the improvements secured under this agreement' " as requiring the improvement of VME to the minimum level of County Standards. Accordingly, "Pursuant to the improvement agreement, read in conjunction with the statutory scheme under which it was executed," the petition for writ of mandate was granted to direct the County appellants to require Barratt to make the offsite road improvements.

These appeals were filed by the County appellants and Barratt.

## DISCUSSION

## I

## *PROCEDURAL OBJECTIONS*

## A

### Introduction

The County appellants and Barratt first contend the trial court erred in overruling their procedural objections to the resolution on the merits of this petition, on the grounds of failure to exhaust administrative remedies and failure to bring an action within the applicable limitations periods. To address these issues, we are required to take into account the unusual manner in which Anthony has pled his petition, to assert that the subdivision improvement agreement entered into between the County and Barratt creates, on his part as an interested citizen, enforceable contract rights or rights to enforce a mandatory duty on the part of the County appellants to perform any acts indicated under County ordinances that would require Barratt to construct the subject road improvements. These rights under the agreement are alleged to arise from the related final map approval process.[8]

---

[8] The County objects on appeal that Anthony was attempting to enforce the subdivision improvement agreement as a third party beneficiary of it, such that his standing to sue as an intended beneficiary was in question. Anthony's respondent's brief replies that no third

■ We will analyze the pleaded facts in this case in terms of the SMA requirements, which on the procedural issues, raise questions of statutory construction concerning the proper scope of section 66499.37. The construction of this statute presents a question of law that is subject to independent review on appeal. (*Legacy Group v. City of Wasco* (2003) 106 Cal.App.4th 1305, 1311 [131 Cal.Rptr.2d 460] (*Legacy Group*).) ■ Exhaustion of administrative remedies is a jurisdictional doctrine concerning the right to resort to the courts for relief, which similarly raises questions of law which may be reviewed on a de novo basis. (*Park Area Neighbors v. Town of Fairfax* (1994) 29 Cal.App.4th 1442, 1447 [35 Cal.Rptr.2d 334].)

B

## Justiciability of Petition

Under section 66499.37, "Any action or proceeding to attack, review, set aside, void or annul the decision of [a] . . . legislative body *concerning a subdivision, or of any of the proceedings, acts or determinations taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto*, shall not be maintained by any person unless such action or proceeding is commenced and service of summons effected within 90 days after the date of such decision. Thereafter all persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such decision or of such proceedings, acts or determinations . . . ." (Italics added.)

This court in *Presenting Jamul v. Board of Supervisors* (1991) 231 Cal.App.3d 665, 670–671 [282 Cal.Rptr. 564], discussed the purpose of section 66499.37. "[T]his provision 'manifests "a patent legislative objective that the validity of . . . decisions of a local legislative body, or its advisory agency, be judicially determined as expeditiously as is consistent with the requirements of due process of law." ' [Citations.]" This court interpreted section 66499.37 as governing a legislative body's subdivision-related decision *"regardless of the nature of or label attached to the action"* used to challenge that decision. (*Presenting Jamul, supra*, at p. 671, italics added.)

"In construing section 66499.37, the California Supreme Court has stated it 'applies by its terms to *any* action involving a controversy over or arising out

party beneficiary theory is being argued, and that he should have standing as an interested citizen to ensure that the County's land use decisions are lawful and within the scope of its authority under the SMA and the SDCC. Anthony takes the position that the subdivision improvement agreement can accordingly be enforced through mandamus. In light of the conclusions we reach on the other procedural objections and on the merits, we need not further address this nonissue here.

of the Subdivision Map Act.'" *(Legacy Group, supra,* 106 Cal.App.4th at p. 1311, citing *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 23 [32 Cal.Rptr.2d 244, 876 P.2d 1043] *(Hensler).)* *Legacy Group* required the appeals court to address, as a matter of first impression, whether or not a claim for breach of contract is subject to section 66499.37. That breach of contract claim was based on an alleged breach of a development agreement, and the court held that the statute of limitations normally applicable to contract claims would apply, and the contract claim would not be subject to section 66499.37 "unless the breach of contract claim overlaps with a claim arising under the SMA." *(Legacy Group, supra,* at p. 1312.)

The court in *Legacy Group* focused upon the gravamen of the claim and whether it concerned acts that could have been challenged as a violation of the SMA. *(Legacy Group, supra,* 106 Cal.App.4th at p. 1313.) It compared the "decision concerning only the interpretation of a clause in a development agreement," such as gave rise to the action before it, to a more fundamental one that was actually a decision to adopt a development agreement. It then found the subject contract interpretation question, based on a development agreement, to be a limited one that did not qualify as "concerning a subdivision" for purposes of section 66499.37. *(Legacy Group, supra,* at p. 1313.) The court based this conclusion upon two factors: (1) the development agreement statutory scheme (§ 65864 et seq.) was separate from the SMA statutory scheme (§ 66410 et seq.), and (2) a separate statute of limitations concerning certain types of controversies involving development agreements would potentially apply (§ 65009, subd. (c)(1)), and therefore it would be redundant to invoke the SMA's statute of limitations instead. *(Legacy Group, supra,* at pp. 1312–1313.) Accordingly, to the extent the action challenged the decision to adopt, amend or modify that development agreement, it was not found to be an action involving a controversy over or arising out of the SMA. *(Legacy Group, supra,* at p. 1313.)

However, the court in *Legacy Group* distinguished between the breach of contract claim (development agreement) that was separate from the SMA allegations, and another portion of the plaintiff's action that was found to be subject to and barred by the SMA statute of limitations. Thus, to the extent the plaintiff was challenging the City's refusal to approve the final maps for its projects, that claim "directly concerns a matter addressed by the SMA," and this challenge to the final map approval was held to be time-barred. *(Legacy Group, supra,* 106 Cal.App.4th at pp. 1313–1314, citing *Soderling v. City of Santa Monica* (1983) 142 Cal.App.3d 501 [191 Cal.Rptr. 140] *(Soderling)* ["action to compel city to approve final subdivision maps barred by § 66499.37"].) The court explained: "When a breach of contract claim overlaps with or concerns acts by the city council that could have been challenged under the SMA, then the shorter statute of limitations set forth in section 66499.37 will apply. Accordingly, Developers' attack on the failure to

approve maps, even though pled as a breach of contract, should have been brought within the 90-day period of limitation." (*Legacy Group, supra,* 106 Cal.App.4th at p. 1314.)

Turning to the allegations raised in our case, the County appellants and Barratt initially contend the trial court erred in ruling that Anthony's entire action was not barred by the applicable statute of limitations. They take the position that the subject discretionary approvals authorized by the County were made in connection with the 1996 tentative map approval, such that an action to challenge those approvals (which did not include the imposition of the VME offsite road improvements) had to be brought at that time. They rely, for example, upon *Soderling, supra,* 142 Cal.App.3d 501, in which the appellate court held that an action to challenge the validity of conditions imposed by a city on a tentative map approval was barred by the short limitations period of section 66499.37. In that case, the developer challenged the denial of its final map more than two years after the tentative map conditions were imposed, but this was too late because the later denial of the final map approval, for failure to comply with the tentative map conditions, was not the relevant decision for purposes of starting the running of the limitations period. (*Soderling, supra,* at pp. 505–506.) Instead, since the final map approval was ministerial and was based on a determination whether all the tentative map conditions were met, the time to challenge the conditions was at the time they were imposed on the tentative map approval. (*Ibid.*)

■ Here, the trial court determined there was no bar of the SMA statute of limitations, section 66499.37, on the theory that a determination favorable to Anthony would not serve to invalidate either Barratt's tentative or final map, nor would it affect the legality of the subdivision improvement agreement or any decision which was made in connection with the approval of the maps. This theory is misplaced. The language of section 66499.37 is broad, referring to "*any* action involving a controversy over or arising out of the Subdivision Map Act." (*Legacy Group, supra,* 106 Cal.App.4th at p. 1311, citing *Hensler, supra,* 8 Cal.4th 1, 23.) If the action seeks to attack or review the decision of the legislative body, and the decision was "*concerning a subdivision,*" the statute by its terms applies. This is not a case such as *Legacy Group,* in which a contractual agreement from a different statutory scheme was subject to court interpretation, without regard to the SMA limitations period. Rather, the subdivision improvement agreement was a procedure created by and included in the SMA (§ 66462), and disputes regarding its content and efficacy amount to disputes "concerning a subdivision" within the meaning of section 66499.37. ■ As stated by the court in *Legacy Group, supra,* 106 Cal.App.4th 1305, it is not appropriate to restate the responsibilities imposed upon local governments by the SMA, simply by creatively pleading them as contractual covenants under a related agreement. (*Id.* at p. 1313.)

Accordingly, the trial court erred when it allowed the action to proceed over the objections that the SMA limitations period barred the action. This is true whether the 1996 tentative map approval or the 2001 final map approval challenges is concerned. Further, the trial court failed to recognize that the exhaustion of remedies doctrine is jurisdictional, and that Anthony's failure to appeal the tentative map conditions to the Board, insofar as he found them unsatisfactory, was contrary to the terms of SDCC section 81.307 [permitting an interested person to appeal to the Board from such a decision of an advisory agency under the SMA]; (also see, § 66452.5, subd (b)). Nor did Anthony participate in the 2001 final map approval proceedings, to reraise his objections to the lack of mandatory VME offsite road improvements, which he continues to contend were implied conditions of approval of the maps. Strong policy reasons would have supported such participation: " 'The requirement of exhaustion of administrative remedy is founded on the theory that the administrative tribunal is created by law to adjudicate the issue sought to be presented to the court, and the issue is within its special jurisdiction. If a court allows a suit to go forward prior to a final administrative determination, it will be interfering with the subject matter of another tribunal. [Citation.] Consequently, the requirement of exhaustion is a jurisdictional prerequisite, not a matter of judicial discretion. [Citation.] [¶] The exhaustion doctrine . . . operates as a defense to litigation commenced by persons who have been aggrieved by action taken in an administrative proceeding which has in fact occurred but who have failed to "exhaust" the remedy available to them in the course of the proceeding itself. [Citation.]' [Citation.]" (*Tahoe Vista Concerned Citizens v. County of Placer* (2000) 81 Cal.App.4th 577, 589 [96 Cal.Rptr.2d 880].)

■ The trial court would have been justified on this record in deciding it lacked jurisdiction to adjudicate the petition for writ of mandate, in light of Anthony's failure to avail himself of administrative remedies to challenge the tentative map approval conditions or the final map. It was error not to make such a finding.

That is not the end of the inquiry, however. Similar to the arguments of the plaintiff in *Legacy Group, supra,* 106 Cal.App.4th 1305, Anthony goes farther, contending that under the subdivision improvement agreement, contract interpretation issues are presented that do not involve "a controversy over or arising out of the Subdivision Map Act." (*Hensler, supra*, 8 Cal.4th at p. 23.) This theory presupposes that the action is not primarily an attack on the project maps, at least as it focuses upon the alleged mandatory duties required under the subdivision ordinance (and/or the subdivision improvement agreement), i.e., the duties of the County and its personnel to conform with applicable law.

Despite our preliminary conclusion that the trial court should have disposed of the matter on statute of limitations and exhaustion of remedies grounds, we believe we are constrained by the nature of the pleadings in this matter to address this argument in terms of whether these allegations about the 2001 final map approval and subdivision improvement agreement entered into in conjunction with it, read as a whole, raise questions about the imposition of duties outside the scope of the tentative map and its conditions for approval. Questions are also raised about whether a substantive decision on offsite road improvements can be deferred until the time of approval of the final map.

The merits of the issues have been well briefed in this court. In light of the lengthy history of this case and the important legal issues it presents concerning the entire sequence of events, we will take the same approach as did the court in *Soderling, supra,* 142 Cal.App.3d 501, 506, to reach the merits of the arguments, as had the trial court, even though the matter could have been disposed of on appeal as time-barred: "Recognizing the continuing controversy raging over the scope of local authority to impose subdivision map approval conditions, and inasmuch as the issue was fully argued below, we also deem it prudent to reach the merits." (*Ibid.*)

II

*SCOPE OF DUTIES IMPOSED UNDER THE APPLICABLE MAPS AND SUBDIVISION IMPROVEMENT AGREEMENT*

A

Applicable Standards

■ We next turn to the alternative theory that Anthony has pled, that under the requirements of the subdivision improvement agreement, the County and Barrett have certain mandatory duties to enforce County Standards, enforceable by an interested citizen as a contractual matter, such that his action should now be considered timely and meritorious. With respect to those arguments, we are required to interpret the subdivision improvement agreement entered into pursuant to section 66462, in light of and in conjunction with the SMA, which authorized its creation as part of SMA procedures. These undisputed facts are to be analyzed in terms of the SMA, the SDCC, and the County Standards. We agree with the trial court that these issues dominantly present questions of law regarding the interpretation of the subdivision improvement agreement in light of the final map approval

at the same time, pursuant to the relevant statutory provisions. (*McMillin-BCED/Miramar Ranch North v. County of San Diego* (1995) 31 Cal.App.4th 545, 553–554 [37 Cal.Rptr.2d 472].) "A statute is to be construed so as to reach a reasonable result consistent with its legislative purpose, in light of the context of the legislation and its apparent objective." (*Hill v. City of Clovis* (2000) 80 Cal.App.4th 438, 446 [94 Cal.Rptr.2d 901].) In this context of requested mandamus relief, where statutory interpretation is required, the question of whether an agency has an enforceable ministerial duty under a local ordinance is treated as an issue of law, subject to de novo review. (*Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 502 [2 Cal.Rptr.2d 50].)

Additionally, to some extent, substantial evidence issues are argued on appeal, concerning any potential waiver by the County appellants of legal requirements on final map approvals. These we will address as necessary in part II.D, *post*, to determine whether the judgment is supported by substantial evidence. "[W]e may not confine our consideration to isolated bits of evidence, but must view the whole record in a light most favorable to the judgment, resolving all evidentiary conflicts and drawing all reasonable inferences in favor of the decision of the trial court. [Citation.]" (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1203 [52 Cal.Rptr.2d 518] (*Beck Development Co.*).)

Based on its review of the entire record in this case, the trial court concluded that the County had a mandatory duty to require Barratt to improve VME with the requested offsite road improvements. We first discuss all the appellants' various arguments about statutory interpretation and document interpretation, which are properly subject to de novo review. We then address the question of the County's ability to waive the requirements of SDCC section 81.402, to the extent that substantial evidence review is arguably appropriate here.

First, however, we seek to clarify our use of the term "mandatory duty" to discuss the parties' arguments. The County appellants go to some pains to point out that the provisions of section 815.6 should not be applicable here, dealing with tort liability of a public entity for breach of such a duty, because the County appellants have been afforded some measure of discretion in the subject land use decisions. (See *Morris v. County of Marin* (1977) 18 Cal.3d 901, 906–911 [136 Cal.Rptr. 251, 559 P.2d 606]; *Sutherland v. City of Fort Bragg* (2000) 86 Cal.App.4th 13, 20 [102 Cal.Rptr.2d 736].) In reply, Anthony disclaims any reliance on section 815.6 and any claims for damages under it, stating that instead, this action is intended to enforce "the public interest in ensuring that the County is not later saddled with improvement costs, which, as a matter of public policy, is [*sic*] the responsibility of the

subdivider." We accordingly need not discuss that line of authority and instead look to the extent of the duties imposed upon the County appellants, and in turn upon Barratt as a developer, pursuant to the SMA, applicable ordinances, and the subdivision improvement agreement.

## B

### Statutory Background: SMA

In *Beck Development Co., supra,* 44 Cal.App.4th 1160, a valuable outline of the tentative and final map process is provided, against which to measure these arguments: "In considering whether to approve or disapprove a tentative map, a local agency may apply only ordinances, policies and standards which were in effect at the time the application was determined to be complete. [Citation.] . . . [¶] Following approval of the tentative map and before its expiration, the subdivider must file a final map . . . . The approval of a tentative map gives the subdivider certain rights with respect to approval of a final map. Thus, a final map may not be disapproved if it is in substantial compliance with a previously approved tentative map. (Gov. Code, § 66474.1.) And only those requirements and conditions that were applicable to the subdivision at the time of approval of the tentative map may be considered with respect to the final map. (Gov. Code, § 66473.) In other words, *the time for the local agency to take action with respect to a proposed subdivision is when the tentative map is under consideration and, provided the final map is in substantial compliance with the tentative map and any conditions imposed on its approval, the approval of the final map becomes a ministerial act.* (See *Youngblood v. Board of Supervisors* (1978) 22 Cal.3d 644, 656 [150 Cal.Rptr. 242, 586 P.2d 556].)" (*Beck Development Co., supra,* 44 Cal.App.4th at p. 1199, italics added.)

In *Great Western Savings and Loan Association v. City of Los Angeles* (1973) 31 Cal.App.3d 403, 411 [107 Cal.Rptr. 359], the court explained this procedure as creating reliance by the developer upon the approved tentative map with conditions, to produce a final map to satisfy those conditions (unless a subdivision improvement agreement to complete them at a later time is used). Therefore, the developer is entitled to acceptance and approval of the final map, without the imposition of new or altered conditions, particularly those that are primarily technical in nature. Such technical matters would include road requirements subject to engineering or surveying analysis. (*Ibid.*)

It is well established that "a public agency may choose between differing expert opinions. [Citations.] An agency may also rely upon the opinion of its staff in reaching decisions, and the opinion of staff has been recognized as

constituting substantial evidence. [Citation.]" (*Browning-Ferris Industries v. City Council* (1986) 181 Cal.App.3d 852, 866 [226 Cal.Rptr. 575].) These rules are relevant here to give meaning to the discretion conferred upon the director of public works to interpret and apply the County Standards.

Anthony successfully argued to the trial court that the procedure used here failed to address all the relevant authorities and concerns, such that the County breached its duties under the SMA and its own ordinances. On appeal, he defends the judgment by arguing that several provisions of the SMA (§§ 66458, subd. (a) & 66473) should be interpreted as impliedly or expressly incorporating the local subdivision ordinance, SDCC section 81.402, into the improvement requirements imposed at the tentative map stage in 1996. SDCC section 81.402, subdivision (b)(1), provides that major subdivisions must provide access by private road easements that are improved in accordance with County Standards. As will be discussed in part IID, *post*, he also argues those SDCC standards were not and could not be waived by any County authorities.

To examine Anthony's arguments, we first turn to section 66458, subdivision (a), providing, "The legislative body shall, at the meeting at which it receives the map or, at its next regular meeting after the meeting at which it receives the map, approve the [final] map if it conforms to all the requirements of this chapter *and any local subdivision ordinance applicable at the time of approval or conditional approval of the tentative map* and any rulings made thereunder. If the map does not conform, the legislative body shall disapprove the map." (Italics added.)

Similarly, Anthony contends that under section 66473, the Board was required to disapprove the final map in 2001 as not conforming to the same provisions of local ordinances, SDCC section 81.402.[9]

Further, Anthony contends that section 66462, subdivision (a)(1) itself contemplates that the subdivision improvement agreement, providing for completion of those public improvements that were incomplete as of the time of the final map, must refer backwards to the terms and conditions in effect at the time of the approval of the tentative map, to thereby incorporate any and

---

[9] Section 66473 provides, "A local agency shall disapprove a map for failure to meet or perform *any of the requirements or conditions imposed by this division or local ordinance enacted pursuant thereto*; provided that a final map shall be disapproved only for failure to meet or perform requirements or conditions which were applicable to the subdivision at the time of approval of the tentative map; and provided further that such disapproval shall be accompanied by a finding identifying the requirements or conditions which have not been met or performed. Such local ordinance shall include, but need not be limited to, a procedure for waiver of the provisions of this section when the failure of the map is the result of a technical and inadvertent error which, in the determination of the local agency, does not materially affect the validity of the map." (Italics added.)

all local ordinances in effect at that time. (*Ibid.*)[10] Under his theory, this again includes SDCC section 81.402, referring to a requirement that major subdivisions must provide access by private road easements that are improved in accordance with County Standards, and therefore those County Standards must remain applicable. Accordingly, in his view, the County appellants erred by failing to require VME to be improved to those standards, whether at the tentative map stage or at any time thereafter.

In response, the County appellants, joined by Barratt, state that under section 66474.1, the Board properly approved the final map, because the County appellants had previously approved a tentative map for the proposed subdivision and had correctly found that the final map was in substantial compliance with the previously approved tentative map.[11] Essentially, they base this conclusion upon the director of public works' determination in 1995, as accepted at all stages thereafter by all County agencies, that under the County Standards, there were sufficient grounds not to require VME to be improved to County Standards of widening and construction. These grounds included the director's finding that an excessive amount of cut and fill construction would be required in order to apply the County Standards to that portion of the road, and that it was within the spirit and intent of the applicable ordinances to permit this section of VME to remain in its present condition. This was a reversal of a previous position taken by the County, that the VME offsite improvements were originally being required by the director of public works as of October 1995, but that tentative condition of approval was deleted in November 1995 because the road condition was deemed satisfactory and improvements would be prohibitively expensive. The County's PERB and Planning Commission concurred with the director's revised position, and the Board did not find any differently.[12] The County therefore

---

[10] Section 66462, subdivision (a) provides in relevant part: "If, at the time of approval of the final map by the legislative body, any public improvements required by the local agency pursuant to this division or local ordinance have not been completed and accepted in accordance with standards established by the local agency by ordinance applicable at the time of the approval or conditional approval of the tentative map, the legislative body, as a condition precedent to the approval of the final map, shall require the subdivider to enter into one of the following agreements specified by the local agency: [¶] (1) An agreement with the local agency upon mutually agreeable terms to thereafter complete the improvements at the subdivider's expense."

[11] Under section 66474.1: "A legislative body shall not deny approval of a final or parcel map if it has previously approved a tentative map for the proposed subdivision and if it finds that the final or parcel map is in substantial compliance with the previously approved tentative map." This is a ministerial duty. (*Youngblood v. Board of Supervisors, supra,* 22 Cal.3d 644, 656.)

[12] Anthony's respondent's brief appears to challenge the adequacy of these findings by the planning commission. However, the facts supporting the director of public works' determination to make an exception to the County Standards are stated in the record, and that decision

argues that no mandatory duty can be found to require such offsite road improvements, due to the discretion to make such determinations that is conferred upon the director of public works through the County Standards.

To further support their arguments by comparison, the County appellants cite to related SDCC sections 81.304 and 81.306, which permit the County's advisory agencies, such as the director of public works or the director of planning and land use, to modify the requirements of the SDCC when it is impossible or impracticable in the particular case for the subdivider to conform fully to the requirements of the SDCC. Also, SDCC sections 81.405 and 81.406 refer to a requirement to provide security for the anticipated improvements, as detailed in the plans and specifications. These sections support a conclusion that only the improvements clearly and expressly imposed as conditions on the tentative map and for which security was provided, as outlined in the plans and specifications, are enforceable pursuant to the subdivision improvement agreement. Read in the context of the entire regulatory scheme (including section 66474.1), SDCC section 81.402 does not create or support a mandatory duty to require the VME offsite road improvements, when a decision was made otherwise, through the proper channels. Accordingly, we must reject Anthony's theory that the tentative map approval must be deemed to have included an implied condition of fulfillment of all existing, separately imposed requirements of the SDCC, regardless of any specific determination to the contrary as authorized by related County regulations.

As a matter of statutory construction, we agree with the County appellants' position that the statutory and regulatory scheme must be read as a whole, and when we do so, we cannot disregard the discretion conferred upon the County director of public works to make exceptions to the application of County Standards. SDCC section 81.402 must be read in light of the County Standards that were enacted to give meaning to the subdivision ordinance with respect to road improvements. In exercising this delegated discretion, the director of public works acts on behalf of the Board and other County agencies to implement the SDCC and related ordinances. The provisions of sections 66458, subdivision (a) and 66473 do not require a different conclusion, since they refer to approvals at the final map stage in terms of what was already done at the tentative map stage. Here, the director of public works appropriately dealt with local ordinances at the tentative map stage, including SDCC section 81.402, by applying the County Standards as described.

The findings in the administrative record by the director of public works, concerning the justification for such an exception, are sufficient to support a conclusion that the tentative map requirements did not include the requested

was accepted by the planning commission when it approved the tentative map. There are sufficient express and implied findings of fact in the record to support that approval.

offsite road improvements to the VME. Nor did the applicable regulations require such action by the County appellants, for the reasons given by the director of public works about the cut-and-fill construction methods that would be required. Rather, the County authorities expressly considered this issue and determined it was not appropriate to require these particular improvements. The fact that the tentative map conditions expressly required only one offsite road improvement (that the developer must improve an offsite deceleration lane along eastbound Camino Del Rey at VME) also indicates that no other offsite road improvements were being expressly or impliedly required as tentative map conditions. This was an appropriate exercise of discretion on the part of the County appellants to consider the portion of VME at issue here separately, with reference to its particular characteristics.

█ Moreover, once the tentative map conditions were set, the developer had a right to rely upon them and the County appellants could not add additional conditions of a technical nature at the final map stage. (*Beck Development Co., supra*, 44 Cal.App.4th at p. 1199.) We reach the above conclusions pursuant to the framework of the statutes and ordinances cited. We now turn to the appellants' arguments that the trial court additionally erred by finding a basis for the County appellants to require these improvements from Barratt, under the terms of the subdivision improvement agreement.

C

Scope of Duties Imposed Under the Subdivision
Improvement Agreement

As the trial court recognized in its ruling, under section 66462, a subdivision improvement agreement is required when the subdivider has not completed the required public improvements at the time of approval of a final map. The court read this improvement agreement as specifically requiring Barratt to improve VME to minimum County Standards, consistent with the subdivision ordinance, SDCC section 81.402. It relied in large part upon paragraph 5 of the "first" section of the improvement agreement. Both paragraph 5 of the "first" section and paragraph 1 of that section are introduced by general language specifying that the owner will furnish and complete in a timely manner the improvements according to the plans and specifications provided.

Under paragraph 5 of the "first" section of the improvement agreement: "(a) In the event this unit or subsequent units of this project *require access across streets that have not been improved and accepted into the public*

*maintained road system* . . . the Owner agrees to complete said improvements to the satisfaction of the Director . . . prior to requesting acceptance of the improvements secured under this Agreement." For example, this would apply to the required offsite construction of the new deceleration lane on Camino Del Rey, as described in the tentative map conditions and in the specifications and plans attached to the subdivision improvement agreement.

Paragraph 1 then provides that the owner of the project agrees to complete those street improvements within the subdivision as shown on "the attached plans and specifications," which are incorporated into the agreement by reference, *along with "the improvement of any other streets and/or easements specifically designated by the plans and specifications to be improved."* If the VME offsite road improvements had been required at the tentative map stage, they would have been so designated as "any other streets and/or easements specifically designated by the plans and specifications." (*Ibid.*) The essential question presented is whether the general provisions of paragraph 5 of the "first" section (dealing with any required access across streets that have not been improved and accepted into the public maintained road system, which are offsite of the development) should override the specific reference in paragraph 1 to the "other streets" for which improvement was specifically required, as designated (or not) in the development's plans and specifications, as incorporated into the agreement by reference.

In support of his arguments that the trial court properly ordered the County appellants to comply with SDCC section 81.402, and in doing so, it did not impose any new conditions of approval upon Barratt, Anthony argues that ordinary contractual interpretation of the subdivision improvement agreement is appropriate, including the use of extrinsic evidence of the intent of the parties. (See, e.g., *Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912 [75 Cal.Rptr.2d 573].) As already discussed, his theory is that this agreement was executed to comply with section 66462, which in turn, as a matter of law, required general compliance with local ordinances such as SDCC section 81.402. Rather than being a newly imposed contractual term, Anthony therefore contends the obligation to comply with SDCC section 81.402, and hence to improve VME to County Standards "to the satisfaction of the director," has existed since the time of approval of the tentative and final maps. He theorizes that despite the earlier opportunities that he had to challenge the tentative map approval conditions and the final map approval, his failure to do so is immaterial, because the County authorities were under an ongoing duty, threading through the entire proceedings, to comply with all their own rules and regulations, and the subdivision improvement agreement should be enforced accordingly.

Anthony cites several authorities to support his point that a local governing body, at the final map/subdivision improvement agreement stage, may impose

requirements other than the previously imposed tentative map conditions. However, these cases involve the imposition of separate statutory obligations from different statutory schemes, at points in time that were later than the approval of a tentative map under the SMA. We have already discussed the authority of *Legacy Group, supra,* 106 Cal.App.4th 1305, in which a contractual agreement from a different statutory scheme (the development agreement; § 65864 et seq.) was held to be properly subject to court interpretation, without regard to the SMA limitations period. In this case, the trial court did not have the benefit of the *Legacy Group* analysis, since that opinion was filed in March 2003, and this trial court ruling was issued in December 2002. In any event, the subdivision improvement agreement we are considering here was created within the SMA (§ 66462), not outside of it, as in *Legacy Group.*

Other, earlier case law also addresses the effect of different statutory schemes in this context. In *Laguna Village, Inc. v. County of Orange* (1985) 166 Cal.App.3d 125, 131–132 [212 Cal.Rptr. 267], it was held that even though the County had approved the developer's tentative tract map, it was not precluded from requiring the payment of interim school fees as a condition precedent to the issuance of a building permit, under the authority of certain county ordinances and resolutions implementing a statewide school facilities act. Thus, the appeals court rejected the developer's argument that under the SMA, the county had no authority to impose such additional "invalid" conditions on the approval of the project's tentative map and conditional use permit, because "[t]he conditions were *not* imposed pursuant to the Subdivision Map Act, but in accordance with other statutory authority." (*Ibid.*)

A similar result was reached in *South Central Coast Regional Com. v. Charles A. Pratt Construction Co.* (1982) 128 Cal.App.3d 830, 845–846 [180 Cal.Rptr. 555], in which the appellate court held that a local governing body's approval of the tentative map did not preclude the local governing body from later enforcing the statewide coastal protection act, by requiring additional approvals under that separate statutory scheme to be obtained before a final map was issued. The SMA procedures were not to the contrary. (*Ibid.*) This authority does not help Anthony here, where the SMA provisions and related ordinance sections are to be construed internally, without reference to separate statutory schemes.

There are several other problems with Anthony's contract interpretation theory. There is no support for his contention that even where a governmental body has approved a set of conditions for the tentative map, which do not include a particular item, the governmental body remains under some continuing duty at later stages of the approval process to reiterate that decision to

omit such a condition, or to announce a continuing waiver of any provisions that would, otherwise, arguably have required such an omitted or rejected condition. The mere passage of time after the tentative map approval is made, upon specified conditions, does not somehow create a duty to make renewed findings under the particular provision involved, that the particular requirements that might otherwise apply are being waived or exempted.

Further, it is incorrect to focus on the 2001 subdivision improvement agreement without reading the 1996 tentative map approval procedures and conditions as incorporated into it. Likewise, the 1996 tentative map approval incorporated the staff reports, including the determination by the director of public works that there was good reason not to require the VME offsite improvements, in light of the nature of the construction that would be required to do so. Anthony's main substantive theory of entitlement to relief is that the subdivision improvement agreement is separately enforceable on his behalf without regard to SMA limitations and procedures, because the actions he sued upon were not known to him until 2001 when that separate agreement was created. However, this theory is not supported by applicable law and he has accordingly failed to show this action is exempt from SMA procedural bars.

Moreover, Anthony is not justified in reading paragraph 5 of the "first" section of the subdivision improvement agreement as controlling over paragraph 1, when paragraph 5 is more general and paragraph 1 is more specific. Paragraph 5 was evidently intended to refer to those offsite street improvement obligations that were not yet completed or accepted into the public road system as of the time of the subdivision improvement agreement/final map, but that had been agreed to be completed as of the tentative map approval. Paragraph 5 does not serve to impose wholly new conditions at the final map stage. In contrast, paragraph 1 specifically refers to those specifications and plans attached to the subdivision improvement agreement for the required improvements as of the tentative map stage, and the offsite VME road improvements were not included among them.

■ We conclude the language of the subdivision improvement agreement does not support an interpretation that the parties intended to contravene the prior findings of the director of public works, as approved by the planning commission, that the VME offsite road improvements were not required to be accomplished by Barratt. It makes no sense to interpret paragraph 5 of the subdivision improvement agreement, referring to completion of offsite street improvements "to the satisfaction of the Director . . . prior to requesting acceptance of the improvements secured under this Agreement" as requiring the improvement of VME to the minimum level of County Standards, when the director had already made findings that it was satisfactory not to require

such improvements. *Anthony cannot show that the County appellants re-mained under an obligation to improve VME to County Standards under SDCC section 81.402*, nor that a newly created duty to do so came into existence at the final map stage. Nor can Anthony demonstrate that the subdivision improvement agreement was intended to obligate Barratt to do the same, as of the time of its execution at the final map stage, in light of the previous express findings to the contrary as allowed under the County Standards.

D

Waiver Issue: Substantial Evidence Review

We have discussed above how the County appellants complied with applicable law to determine that the Barratt project could proceed without construction of the VME offsite improvements, with reference to both the tentative and final map stages. However, in the alternative, if we were to assume Anthony is correct that a local governing body, at the final map/subdivision improvement agreement stage, may contractually or other-wise impose requirements other than those previously imposed as specified tentative map conditions, we would be required to address his claim that there is insufficient evidence that any of the County appellants effectively entered into a waiver of those particular requirements as to the Barratt project. Anthony is claiming that neither the Board, the County Planning Commis-sion, nor the director of public works had any authority to excuse Barratt from complying with SDCC section 81.402, by waiving its provisions.

In an abundance of caution, we will address this waiver argument. In the planning commission resolution approving the tentative map, the County made findings that the tentative map complied with the SMA, the SDCC, the County Standards, and all other required San Diego County ordinances, with the exception of three standard conditions for tentative maps. Those three standard conditions for tentative maps that were expressly waived here were specified as dealing with condominium or planned unit developments (not applicable), lot grading (not applicable), and a requirement of unitary filing of the tentative map (permitted to be waived).

■ Accordingly, we address the Anthony contention that in light of these three express findings, no further waivers of conditions of the tentative map could be impliedly accomplished here by any County agency, including the Board, the planning commission, or the department of public works. Anthony takes the position that it is the Board that deals on behalf of the County with a final map, which was accompanied here by the subdivision improvement agreement, and therefore only the Board would have the power at the final map

stage to decide whether SDCC section 81.402 requirements must be met or not, to improve private roads to County Standards. He argues no such finding was made by the Board, so the requirements of SDCC section 81.402 must remain applicable. This argument suffers from the same infirmity that Anthony's other arguments suffer from, i.e., that the final map stage may appropriately be used by the County appellants to impose new conditions of approval for a development. However, this position disregards the well-established authority that approval of the final map by the Board is a ministerial duty, if all the tentative map conditions have been met. (*Youngblood v. Board of Supervisors*, *supra*, 22 Cal.3d 644, 656; § 66474.1.) Anthony has failed to show that the requested offsite road improvements to VME were imposed expressly or impliedly as tentative or final map conditions of approval. The contrary is true.

Accordingly, we agree with the position taken by the County appellants and Barratt in their reply briefs, that it is unnecessary to show if any waiver of the provisions of SDCC section 81.402 occurred as of the final map stage, as shown by substantial evidence, because that argument mistakenly addresses events which took place later than the critical time of the tentative map approvals and the conditions imposed at that time. It is unnecessary for us to address any substantial evidence challenge to the existence or nonexistence of a waiver by the Board of the requirements of SDCC section 81.402, as of the time of the final map and subdivision improvement agreement, because our inquiry should properly be concerned with the nature of the conditions of approval placed upon the tentative map. At that time, the issue of the applicability of the County Standards was adequately dealt with by the County Director of Public Works, PERB, and the Planning Commission, and the tentative map was issued with the specified conditions. The VME offsite road improvements were not among them. It is not appropriate to construe this petition as setting forth any enforceable contractual rights in the subdivision improvement agreement, nor any statutory entitlements, because such alleged rights did not have an adequate foundation in the tentative map as approved and processed through the final map stage. Accordingly, the trial court erred in granting the petition, and the judgment must be reversed with directions to enter a new judgment denying the petition.

## DISPOSITION

Judgment reversed with directions to enter a new judgment in favor of the County appellants and Barratt. County appellants and Barratt shall recover costs on appeal.

Aaron, J., and Irion, J., concurred.

A petition for a rehearing was denied March 23, 2004, and respondent's petition for review by the Supreme Court was denied June 9, 2004.